[Crim. No. 4110. Fifth Dist. Jan. 20, 1981.]

THE PEOPLE, Plaintiff and Respondent, v.
BOBBY DON ROBERTS, Defendant and Appellant.

COUNSEL

Quin Denvir, State Public Defender, under appointment by the Court of Appeal, Ezra Hendon, Chief Assistant State Public Defender, Tom Lundy, Michele Vague and Martin M. Spiegel, Deputy State Public Defenders, for Defendant and Appellant.

George Deukmejian, Attorney General, Robert H. Philibosian, Chief Assistant Attorney General, Arnold O. Overoye, Assistant Attorney General, Roger E. Venturi and James T. McNally, Deputy Attorneys General, for Plaintiff and Respondent.

OPINION

THOMPSON, J.*—Bobby Don Roberts appeals his conviction by a jury of violation of Penal Code section 211 (robbery) and Penal Code

*Retired judge of the superior court sitting under assignment by the Chairperson of the Judicial Council.

section 245, subdivision (a) (assault by means of force likely to produce great bodily injury). He was sentenced to state prison for the upper term on the robbery count; sentence on the assault charge was stayed under the provisions of Penal Code section 654.

The evidence discloses that appellant utilized a female companion to entice the victim to take his wallet out of his pocket to give the female money for a taxi. Once the wallet was produced, appellant grabbed it and thereafter· struck the victim several times, knocking him down. When the victim regained his footing, appellant knocked him down again and proceeded to kick him. The victim suffered short lapses of consciousness. He was taken to a hospital with a severe bruise of his head, a cut lip, and bleeding mouth. He was hospitalized for 24 hours.

■ A primary thrust of appellant's argument on appeal is that Penal Code section 245, subdivision (a) is unconstitutional in that it is so vague in its definition of the constituent elements of "great bodily injury" that it does not provide adequate guidance for the fact finder. The statute here provides in pertinent part: "(a) Every person who commits an assault upon the person of another with a deadly weapon or instrument or by any means of force likely to produce great bodily injury is punishable by imprisonment in the state prison for two, three or four years, or in a county jail not exceeding one year, or by fine not exceeding five thousand dollars ($5,000), or by both such fine and imprisonment.

The essential language as it pertains to this case has been the law in California since 1874. Its constitutional sufficiency has been unsuccessfully challenged. (*People* v. *Spreckels* (1954) 125 Cal.App.2d 507 [270 P.2d 513]; *People* v. *Covino* (1980) 100 Cal.App.3d 660, 668 [161 Cal.Rptr. 155].)

The language in Penal·Code section 245, subdivision (a) "great bodily injury" and contained in Penal Code section 12310 relating to the use of explosives is given a close scrutiny in the case of *People* v. *Poulin* (1972) 27 Cal.App.3d 54 [103 Cal.Rptr. 623]. We quote liberally from pages 59-60 of that opinion since all that is said therein applies to our case. "Lack of precision itself, in a criminal statute, is not offensive to the requirements of due process. '"[T]he Constitution does not require impossible standards"; all that is required is that the language "conveys sufficiently definite warning as to the proscribed conduct when measured by common understanding and practices...." [Citation.] ...

"...That there may be marginal cases in which it is difficult to determine the side of the line on which a particular fact situation falls is no sufficient reason to hold the language too ambiguous to define a criminal offense...." [Citations.]' (*Roth* v. *United States* (1957) 354 U.S. 476, 491-492....)

"'A statute is not necessarily invalid even though in its definition some matter of degree may be involved; it will not generally be held invalid if the language is sufficient to enable the attorney to explain to his client and advise what questions may be left to the determination of the jury, so that he will be able to govern himself accordingly; neither is it necessary that the words have a universally recognized meaning; that the charging words will ordinarily be held sufficient if their meaning can be fairly ascertained by references to similar statutes or other judicial determinations, or by reference to the common law, or to the dictionary, or if the words themselves had a common and generally accepted meaning; that the long continued use of words in a statute without question as to their sufficiency creates a presumption that they have come to be well understood by those to whom they apply.... That the courts will consider the underlying purpose of the law and although it might desire a little more certainty, as a general rule the court will uphold the validity of the statute and interpret it to the best of its ability, particularly when any attempt to make it more specific and certain, would tend to nullify its fundamental purpose....that where the statute involves some matters of degree as to which individuals and even jurors might reasonably disagree in their judgment, the statute will not for that reason alone be invalidated,...' (*People* v. *Daniel* (1959) 168 Cal.App.2d Supp. 788, 797-798....)

"With the foregoing principles in mind, the term 'great bodily injury' is sufficiently certain and definite to meet the constitutional requirements." We hold that Penal Code section 245, subdivision (a) is not impermissibly vague.

■ Appellant further attacks his conviction upon the ground that the jury should have been instructed *sua sponte* as to the meaning of the words, "great bodily injury."[1] He contends that without such an instruction, the jury was left with insufficient guidelines to determine the issue.

---

[1]At the time of trial, no instruction defining great bodily injury was requested and there was no such CALJIC instruction available, as there is now (CALJIC No. 9.03).

It is axiomatic that a jury must be properly instructed, *sua sponte* if necessary, as to the essential elements of the crime charged. We believe that the trial court in this case did so instruct the jury in the giving of CALJIC Nos. 9.00, 9.02, and 9.05.[2]

It is necessary to distinguish the line of cases which deal with the types of assaults in which there is a likelihood that great bodily injury will result and those cases which, for example, impose enhancements for the actual injury inflicted. The case of *People* v. *Caudillo* (1978) 21 Cal.3d 562 [146 Cal.Rptr. 859, 580 P.2d 274] provides a clearly defined watershed. Contrary to appellant's arguments, the *Caudillo* case does not reach the issue before us. In that case, the court was concerned only with the injuries actually inflicted, holding essentially that the physical injuries there inflicted did not demonstratively assume the proportion of great bodily injuries and that the infliction of mental suffering, however grave, could not support a finding of great bodily injury.

Here, the test both in the nature of the charging allegations and in the instructions given was whether there was a likelihood that the assault would result in great bodily injury. It is the likelihood, not the actual production of injury, which is the focus of Penal Code section 245, subdivision (a). In the case of *People* v. *Covino, supra,* 100 Cal.

---

We express no opinion on the adequacy of that new instruction or the necessity for its being given upon request.

[2]CALJIC No. 9.00 (1971 rev.), as read to the jury, provides: "An assault is an unlawful attempt, coupled with a present ability, to commit a wrongful act by means of physical force upon the person of another. [¶] To constitute an assault, it is not necessary that any actual injury be inflicted, but if an injury is inflicted, it may be considered in connection with other evidence in determining whether an assault was committed and, if so, the nature of the assault."

CALJIC No. 9.02, as read to the jury, provides: "Every person who commits an assault upon the person of another by any means of force likely to produce great bodily injury is guilty of a crime. [¶] To constitute that crime the assault must be committed by a means which is used in such a manner and with such force that it would be likely to produce great bodily injury. [¶] Actual bodily injury is not a necessary element of the crime, but, if such injury is inflicted, its nature and extent are to be considered in connection with all the evidence in determining whether the means used and the manner in which it was used were such that they were likely to produce great bodily injury.

CALJIC No. 9.05, as read to the jury, provides: "An assault by means of force likely to produce great bodily injury may be committed with the hands or fists, and proof of such an assault need not show that the defendant actually injured the other person, but there must be proof that as a result of physical force used or attempted to be used, and the manner of such use or of such attempt, there was a likelihood of great bodily injury being inflicted upon another person."

App.3d 660, where the injury was produced by a choking attempt which left little physical evidence of injury, the court commented at page 667: "While it is true that 'when the evidence shows that a blow has been struck or a physical injury actually inflicted, the nature and extent of the injury is a relevant and often controlling factor in determining whether the force used was of a felonious character' (*People* v. *Wells* (1971) 14 Cal.App.3d 348, 358...; *People* v. *Muir* (1966) 244 Cal. App.2d 598, 604...; see 1 Witkin, Cal. Crimes (1963) § 272 p. 255), an injury is not an element of the crime, and the extent of any injury is not determinative. 'The crime...like other assaults, may be committed without infliction of any physical injury, and even though no blow is actually struck. [Citation.] The issue, therefore, is not whether serious injury was caused, but whether the force used was such as would be likely to cause it.' (*Id.*; *People* v. *Wingo* (1975) 14 Cal.3d 169, 176...; *People* v. *Dewson* (1957) 150 Cal.App.2d 119, 132....)"

In our case, the kicking on the head and torso of a largely defenseless man on the ground appears to us to be unmistakably an assault which a jury could reasonably find was likely to produce great bodily harm. And here, of course, the injuries inflicted bear out that fact. In addition to the cuts and bruises and the unconsciousness produced, the victim received a blow to the forehead which produced a large welt. If this blow had struck the nearby eye, it might well have produced blindness in that eye, surely a great bodily injury.

We do not believe that any instructional amplification on the words "likely" or "great bodily injury" would have significantly enlightened the jury. In the last analysis, it is the jury's province to determine what the ultimate product of the assault might have been. It was clearly within the jury's province to determine that appellant intended to kick his victim with whatever force was required to permit appellant to accomplish his purpose, the robbery of his victim. No amount of "hair splitting" would or should have deterred the jury from its task of deciding whether the assault as the jury heard it described was likely to have resulted in "great bodily injury." The jury was not required to determine if the injuries actually inflicted could be described as great bodily injury.

Words can obfuscate as well as clarify. Additional instructions may have confused rather than enlightened. We seriously doubt that the mil-

lions of words which have been written upon the subject of the Ten Commandments have added significantly to our understanding of them.

The judgment is affirmed.

Zenovich, Acting P. J., and Hanson (P. D.), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied March 18, 1981.