[No. E006604. Fourth Dist., Div. Two. June 8, 1990.]

THE PEOPLE, Plaintiff and Respondent, v.
MERRY CHRISTINE SHIELDS, Defendant and Appellant.

**[Opinion certified for partial publication.\*]**

---

   \*Pursuant to California Rules of Court, rules 976(b) and 976.1, this opinion is certified for publication with the exception of the sections entitled MIRANDA ISSUES, SUFFICIENCY OF THE EVIDENCE, and SENTENCING ISSUES.

**COUNSEL**

Christopher Blake, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Richard B. Iglehart, Chief Assistant Attorney General, Harley D. Mayfield, Assistant Attorney General, Raquel Gonzalez and Carl H. Horst, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

**HOLLENHORST, Acting P. J.**—Defendant Merry Shields was found guilty of child endangering (Pen. Code, § 273a, subd. (1)) and being an accessory after the fact (Pen. Code, § 32). She appeals, raising alleged *Miranda* errors, alleged instructional error, the sufficiency of the evidence, and sentencing issues.

## FACTS

On June 4, 1988, Max Wagner, age three and a half, died of multiple injuries inflicted by an assailant. The coroner testified that the boy had bruises all over his body and a serious internal injury. In his opinion, all of the injuries were inflicted within six days of Max's death. Several witnesses testified that Max was playing the afternoon that he died and he did not have a large contusion on his forehead at that time. The final blow, the large contusion on his forehead, was apparently inflicted between 6 and 7 in the evening. An ambulance was called at 7:30 and it arrived about eight minutes later.

Max lived with his mother, defendant Merry Shields, her boyfriend, Michael Prisk, and his brother Jake. Michael Prisk called the ambulance, and Merry Shields brought Max out of the house to the emergency crews. An emergency medical technician testified that Max was not breathing when he arrived, and he was told that Max had not been breathing for about 15-20 minutes. The technicians were able to restore a heartbeat, but not spontaneous breathing. They took Max to a hospital where he died.

A neighbor testified that she heard a loud argument at defendant's house that lasted about 15 minutes and ended about 45 minutes before the ambulance arrived. At another point the witness stated that she heard what she called a mother's scream at the end of the argument and the ambulance did not arrive until at least half an hour later. The same witness testified that Prisk came out of the house twice after the scream and went towards a telephone across the street. The third time he came out he said "Oh, my God. My baby."

Another witness testified Prisk did not make a telephone call the first time he went to the telephone but that he went back home, changed clothes, returned to the telephone about 10 minutes later and presumably made a call. The fire truck arrived about five minutes later.

Another neighbor testified that Shields and Prisk took a five- or ten-minute walk together around 7 o'clock. Prisk was hanging his head low, covering his face with one hand.

**4**

. . . . . . . . . . . . . . . . . . . . . .

## Alleged Instructional Error

Defendant next contends that the jury was misinstructed. CALJIC No. 6.40 (5th ed.), defining accessory to a felony, was given, and the instruction was modified to define the felony as murder. However, defendant contends that, since no instruction on the elements of murder was given, the jury had no basis for concluding that Prisk was guilty of murder, and no basis for a further conclusion that defendant was guilty of being an accessory to that murder.

Specifically, the "Use Note" to CALJIC No. 6.40 states: "If the issue of whether a felony had been committed is disputed, or depends upon proof of facts showing its occurrence, instruction defining felony will have to be given."

█ It is settled that the duty of the trial court is to see that the jury is fully instructed on the law applicable to the case in order to ensure that the jury will properly consider the full range of possible verdicts. (*People* v. *Wickersham* (1982) 32 Cal.3d 307, 324-325 [185 Cal.Rptr. 436, 650 P.2d 311].) Accordingly, the jury must be instructed on necessarily included offenses when any substantial evidence supports them. (*People* v. *Flannel* (1979) 25 Cal.3d 668, 684-685 [160 Cal.Rptr. 84, 603 P.2d 1].) █ Likewise, the trial court has a sua sponte duty to instruct on defenses relied on by the defendant and on the relationship of these defenses to the elements of the charged offense. (*People* v. *Sedeno* (1974) 10 Cal.3d 703, 716 [112 Cal.Rptr. 1, 518 P.2d 913], overruled on other grounds, *People* v. *Flannel, supra*, 25 Cal.3d 668, 684-685, fn. 12.)

█ The jury here was fully instructed on the elements of the charged offense, being an accessory to a felony, by the giving of CALJIC No. 6.40 (5th ed.). Although the felony involved was identified as murder in the instruction, no technical definition of murder was given, and there was no request that it be given.

While we have found no cases requiring a sua sponte instruction on the definition of either the word "felony" or the word "murder" when used in such an instruction, the situation is similar to a situation which has arisen

---

* See footnote, *ante,* page 1.

under Penal Code section 245, subdivision (a). Penal Code section 245, subdivision (a) is assault with a deadly weapon or by any means likely to produce great bodily injury. Three 1981 cases considered the issue of whether the court has a sua sponte duty to further define the term "great bodily injury" in this context. Each case held that no such sua sponte duty existed. (*People* v. *Miller* (1981) 120 Cal.App.3d 233, 236 [174 Cal.Rptr. 479]; *People* v. *Kimbrel* (1981) 120 Cal.App.3d 869, 876 [174 Cal.Rptr. 816]; *People* v. *Roberts* (1981) 114 Cal.App.3d 960, 964-966 [170 Cal.Rptr. 872].) Similarly, in *People* v. *La Fargue* (1983) 147 Cal.App.3d 878, 886 [195 Cal.Rptr. 438], the court found that it was unnecessary to amplify the definition of great bodily injury that was given to include specific examples.

We find the analogy persuasive here. All that was needed was proof that a felony had been committed. While that felony was defined in the instruction as murder, the jury was not required to find a technical first degree murder in order to convict defendant of being an accessory to a felony. The uncontradicted evidence was that Max died of "multiple injuries by assailant(s)." There was no doubt that a felony, probably murder, had been committed, and defendant did not contend otherwise.[5] There is no suggestion in the record that the jury was confused on this issue nor does defendant argue that the jury was actually misled. While defendant could have properly requested further instructions on this issue, we find that the trial court had no duty to give such instructions sua sponte.

SUFFICIENCY OF THE EVIDENCE*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

SENTENCING ISSUES*

.   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .   .

---

[5] Defendant requests that we take judicial notice that Prisk pled guilty to voluntary manslaughter, not murder. Plaintiff objects to considering this alleged fact. We decline to take judicial notice as requested by defendant but we note that voluntary manslaughter is a felony. (Pen. Code, §§ 17, subd. (a), 192, subd. (a), & 193, subd. (a).)

*See footnote, *ante,* page 1.

## DISPOSITION

The judgment is affirmed.

McDaniel, J., and Dabney, J., concurred.