814 P.2d 458

**STATE of New Mexico,**
**Plaintiff–Appellee,**

v.

**Donna GARDNER,**
**Defendant–Appellant.**

No. 12463.

Court of Appeals of New Mexico.

May 14, 1991.

Certiorari Denied June 20, 1991.

Jacquelyn Robins, Chief Public Defender, Gina Maestas, Asst. Appellate Defender, Santa Fe, for defendant-appellant.

Tom Udall, Atty. Gen., Margaret McLean, Asst. Atty. Gen., Santa Fe, for plaintiff-appellee.

## OPINION

DONNELLY, Judge.

Defendant appeals her convictions for making a false report, contrary to NMSA 1978, Section 30–39–1 (Repl.Pamp.1989), and conspiracy to harbor a felon, contrary to NMSA 1978, Sections 30–22–4 and 30–28–2 (Repl.Pamp.1984). We discuss: (1) sufficiency of the evidence to support the conviction of making a false report; (2) whether the court erred in instructing the jury as to the charge of conspiracy; and (3) claim of error in denying defendant's motion to set aside the verdict or grant a new trial. We reverse and remand.

The pertinent facts are undisputed. Police officers were called on November 25, 1987, to the scene of a shooting in Albuquerque. When the investigating officers arrived, defendant informed police that she had shot Phil Lopez, her former boyfriend, in self-defense. Defendant told officers that despite warnings to leave, Lopez threatened to kill defendant and Herb Sitz and then attempted to enter Sitz's house, in which defendant had spent the previous night. Upon subsequent investigation, defendant admitted that she had not done the shooting and that Lopez had been shot by Sitz. She continued to assert, however, that the shooting had been perpetrated in self-defense, that Lopez was enraged and violent, that he had shouted he was going to kill both defendant and Sitz, and that he had moved toward Sitz in a threatening manner. Defendant also related that Lopez had a prior history of violent behavior and that he had been involved in several violent incidents against a former girlfriend and defendant.

Based on defendant's original attempt to deflect suspicion from Sitz, the state charged defendant with making a false report, harboring a felon, and conspiracy to harbor a felon. Defendant entered pleas of not guilty to each of the charges. At the conclusion of the trial, the jury acquitted defendant of the charge of harboring a felon but convicted her of the charges of making a false report and conspiracy.

## I. CHARGE OF MAKING A FALSE REPORT

Defendant maintains there was no substantial evidence to support the charge of making a false report because there was no evidence that she falsely imputed blame upon anyone but herself for the crime. In essence, she argues that a false confession intended to shift blame from another person to oneself is outside the scope of the false reports statute. Section 30–39–1 specifies that "[i]t is unlawful for any person to intentionally make a report to a law enforcement agency or official, which report he knows to be false at the time of making it, *alleging a violation by another person* of the provisions of the Criminal Code." (Emphasis added.) By its plain language, the statute applies only if a person falsely alleges a criminal violation by someone other than the person making the allegation. *See State v. Rogers,* 94 N.M. 527, 612 P.2d 1338 (Ct.App.1980) (false re-

ports statute refers to a false accusation of *another*).

The state argues that the language of the statute "alleging a violation by another person" should be interpreted to mean "alleging a violation by someone other than the true perpetrator," and that legislative intent in enacting the false reports statute was to proscribe the giving of any statement by a declarant which has the effect of diverting the attention and effort of law enforcement officials away from the actual perpetrator of a crime. We do not read the statute so broadly.

Section 30–39–1 follows in part the approach set forth in the Model Penal Code promulgated by the American Law Institute. The Model Penal Code applies a two-part approach to the crime of false reporting to law enforcement authorities. A.L.I. *Model Penal Code and Commentaries* Part II, Section 241.5(1), at 178 (1985) makes it a misdemeanor to "knowingly [give] false information to any law enforcement officer with purpose to implicate another * * *." Section 241.5(2) makes it a petty misdemeanor to furnish information to law enforcement officers concerning an offense or other incident, knowing that the offense or incident did not occur. The Committee Comment to Section 241.5(1) reveals that its purpose is to address "[t]he harm that can be caused to an individual if he is implicated in crime by one who gives false information to law enforcement authorities * * *." *Id.* at 161. Although New Mexico's false reporting statute has language analogous to Model Penal Code Section 241.5(1), it omits language contained in Section 241.5(2) of the Code criminalizing fictitious reports.

Applying the basic rules of statutory construction, we first look to the plain language of the statute. *See State v. Lujan*, 103 N.M. 667, 712 P.2d 13 (Ct.App.1985) (legislative intent is to be determined primarily by language of the statute); *State v. Keith*, 102 N.M. 462, 697 P.2d 145 (Ct. App.1985) (doubts about construction of criminal statutes are to be resolved in favor of the rule of lenity). The clear language of the statute indicates that the act criminalizes false accusations by a declarant alleging that another person has committed a criminal act. *See State v. Rogers.*

Section 30–39–1 proscribes the false accusation of another, when the declarant asserts that another individual is guilty of criminal activity, whether or not a crime has actually been committed. The statute does not reach situations where the declarant falsely assumes the blame for another. *Cf.* Cal.Penal Code § 148.7 (West 1988) (criminalizing falsely identifying oneself so as to serve the criminal sentence of another). Although "false reporting" statutes have been enacted in a number of jurisdictions expressly criminalizing the filing of any false report, our statute adopts a more restrictive approach. *State v. Rogers. Compare, e.g., State v. Pandozzi*, 136 N.J. Super. 484, 347 A.2d 1 (1975) (statute proscribes provision of any false information to law enforcement officer; purpose of statute is to prevent the waste of time, energy, and expense by law enforcement officers running down false leads) *with People v. Komosa*, 47 Misc.2d 634, 263 N.Y.S.2d 153 (1965) (statute, since revised, outlaws false reports made with intent to harass, annoy, or alarm another).

■ Thus, we hold that Section 30–39–1, as presently written, does not apply to situations where an individual falsely assumes the responsibility for a criminal offense. The state suggests the statute should be given an expanded meaning. Where the state seeks to broaden the application of the statute beyond the plain wording of the act, the appropriate remedy, however, involves "legislative therapy and not judicial surgery." *City of Albuquerque v. Sanchez*, 81 N.M. 272, 273, 466 P.2d 118, 119 (Ct.App.1970), *overruled on other grounds, State v. Ball*, 104 N.M. 176, 718 P.2d 686 (1986). Because we determine there was no evidence in this case indicating that defendant falsely accused anyone other than herself and that defendant's conduct is outside the provisions of Section 30–39–1, we conclude that there was no substantial evidence supporting the verdict finding defendant guilty of the charge of

making a false report. Defendant's conviction on this count is therefore reversed.

## II. CONSPIRACY TO HARBOR A FELON

█ Defendant also challenges her conviction of conspiracy to harbor a felon. Pursuant to the instructions to the jury, the state was required to prove that defendant and another person agreed to commit the crime of harboring a felon and intended to commit harboring a felon. Under Section 30–22–4, to establish culpability of the crime of harboring a felon, the state must prove that defendant knew that the alleged felon had committed a felony and that defendant had the intent that the alleged felon escape or avoid arrest, trial, conviction or punishment. *Id.; see also* SCRA 1986, 14–2240. In this case the state was required to prove that defendant agreed to aid Sitz, knowing he had committed a felony and that defendant entertained the intent that Sitz escape arrest or punishment. *Id.*

The state attempted to prove at trial that Sitz had committed the offense of murder. Throughout the trial defendant elicited testimony indicating she thought the shooting was justifiable because it had occurred when Sitz was acting in self-defense. A private investigator testified that defendant told Sitz after the incident that she believed he acted in "self-defense." The officers who conducted the initial police investigation also testified that defendant related facts concerning Lopez's prior history of violence, Lopez's actions in refusing to stay away from the premises, his jumping a fence in order to enter the yard, his attempting to enter the house despite her warnings and warnings from Sitz that he was armed, and Lopez's continued threats to kill both Sitz and defendant. At the trial, defendant submitted instructions defining first and second degree murder, self-defense, and defense of another. The trial court refused to give those instructions. Defendant contends this refusal constituted error. We agree.

█ The offense of harboring a felon had its genesis in the common law offense of accessory after the fact. *State v. Mobbley,* 98 N.M. 557, 650 P.2d 841 (Ct.App. 1982). Under the statute proscribing the harboring of a felon and the common law applicable to accessories, in order to convict a defendant as an accessory the state must prove that a felony has been committed and that the defendant knew the offender committed a felony. § 30–22–4; W. La-Fave & A. Scott, *Criminal Law* § 66 (1972); *Maddox v. Commonwealth,* 349 S.W.2d 686 (Ky.Ct.App.1961) (though conviction of accessory after the fact does not depend on principal's conviction, principal's guilt must be alleged and proved); *State v. Chism,* 436 So.2d 464 (La.1983) (accessory may be tried and convicted if principal has not yet been arrested, tried, or convicted, but state must still prove guilt of principal beyond a reasonable doubt); *People v. Clough,* 43 A.D.2d 451, 353 N.Y.S.2d 260 (1974) (not sufficient to show defendant believed a crime was committed; state must prove crime actually committed). It is not enough to show that the defendant may have suspected that a felony was committed; instead, the state must prove that the defendant knew a felony was actually committed. W. LaFave & A. Scott, *supra,* § 66.

█ Defendant in this case did not concede that a felony had been committed or that she knew the shooting constituted a felony. Instead, she attempted to show that the shooting was justifiable because Sitz acted to defend both her and himself. *See* NMSA 1978, § 30–2–7 (Repl.Pamp. 1984). Since defendant disputed the fact as to whether the shooting was a felony, the jury should have been instructed regarding her theories of justifiable homicide and the definition of murder. *See People v. Shields,* 222 Cal.App.3d 1, 271 Cal.Rptr. 228 (1990) (court held instruction defining felony need not be given sua sponte, but points to use note for accessory to a felony jury instruction indicating if the issue of whether a felony has been committed is disputed, or depends on proof of facts showing its occurrence, court should give instruction defining felony).

The state argues that no instructions concerning the elements of murder, self-defense, or defense of others were necessary because the harboring statute does not require that the state aver or prove that the principal felon has been arrested, prosecuted, or tried. Section 30–22–4. We think this argument falls short of the mark. As discussed above, the statute requires that the state prove that a specific felony has been committed, whether or not the perpetrator has been arrested, prosecuted, or tried.

Specification of the particular felony alleged to have been committed and the essential elements of the alleged felony are mandatory under SCRA 1986, 14–2810. As stated in the Use Note to the conspiracy instruction, the instruction should specify "the name of the felony or felonies in the alternative and give the essential elements [of the alleged felony or felonies] other than venue immediately after this instruction unless they are covered by essential element instructions relating to the substantive offense." *Id.*

To properly decide whether the essential elements of the offense of conspiracy has been proved, it was necessary that the jury in this case be instructed on the essential elements of the felony alleged to have been the object of the conspiracy. *Cf. State v. Privett,* 104 N.M. 79, 717 P.2d 55 (1986) (trial court has a duty to instruct the jury on all questions of law essential for a conviction); *State v. Venegas,* 96 N.M. 61, 628 P.2d 306 (1981) (defendant is entitled to have jury instructed on his theories of the case if they are supported by the evidence); *People v. Shields* (trial court when properly requested has duty to instruct on the law applicable to the case). It is axiomatic that a jury cannot decide whether a felony has been committed without knowing the elements of the crime alleged to have been committed. *Cf. State v. Rhea,* 93 N.M. 478, 601 P.2d 448 (Ct.App.1979) (jury must be instructed on every essential element of an offense).

■ Thus, in a case alleging that defendant conspired to harbor a felon, where defendant contests the charge and asserts that a felony has in fact not been committed, or that defendant did not know the principal's act was a crime, the defendant is entitled to have the jury instructed on the elements of the predicate felony or felonies the state alleges were committed. Here, defendant submitted a requested instruction setting forth the elements of first degree murder. *See* SCRA 1986, 14–201. This instruction was refused. Since UJI Crim. 14–2810 requires submission of the essential elements of the felony alleged by the state to be the object of the conspiracy to conceal a felony, and the instructions submitted to the jury omitted these elements, reversal of the conspiracy conviction is required.

## III. ISSUES DEALT WITH SUMMARILY

■ Lastly, defendant asserts that because the jury acquitted her of the charge of harboring a felon, it could not convict her of conspiracy to harbor a felon and that the court erred in denying her motion to set aside the verdict or to grant a new trial. We find this contention without merit. The crimes of harboring and conspiracy to harbor a felon involve different elements, and based upon the record before us the jury could properly determine that while the elements of harboring a felon were not established, nevertheless the evidence was sufficient to support a jury determination that defendant committed the conspiracy offense. *See State v. Smith,* 102 N.M. 512, 697 P.2d 512 (Ct.App.1985) (crimes of harboring and conspiracy to harbor involve different elements); *see also State v. Shade,* 104 N.M. 710, 726 P.2d 864 (Ct.App. 1986) (substantive crimes and crime of conspiracy are different; failure to convict on substantive crime does not prevent conviction for conspiracy).

■ Defendant also argues that there was no substantial evidence to support her conviction of conspiracy because the record is devoid of evidence that she knew the shooting constituted the offense of murder. The record indicates, however, that Sitz shot and killed Lopez, who was unarmed. There was evidence that defendant and Sitz

agreed she would take the blame for the shooting, although she was aware that Sitz had killed Lopez. Under these facts, the jury could reasonably determine that the shooting was unlawful, because it involved an excessive use of force under the circumstances. *Cf.* SCRA 1986, 14–5171 (in analyzing self-defense contention, jury must decide whether a reasonable person in the same circumstances would have acted as the defendant did). The mere fact that defendant and Sitz felt it was necessary to conceal the truth is sufficient to cast some doubt on defendant's assertion that the shooting was done in self-defense. *See State v. Sutphin*, 107 N.M. 126, 753 P.2d 1314 (1988) (fact-finder may reject defendant's version of an incident; attempt to conceal involvement in killing is factor to be considered in analyzing defendant's claim that he acted in self-defense). We conclude that there was sufficient evidence for the jury to decide that a felonious killing had occurred and defendant knew the killing was felonious.

Due to our resolution of Issue II, we need not address the other issue raised by defendant.

## IV. CONCLUSION

For the foregoing reasons, we reverse defendant's conviction for making a false report. We also reverse the conviction for conspiracy to harbor a felon and remand for a new trial on that charge.

IT IS SO ORDERED.

MINZNER and CHAVEZ, JJ., concur.