Filed 12/3/13  P. v. Kellersberger CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B242632 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. KA093531) |
| v. | |
| JOSHUA A. KELLERSBERGER, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Los Angeles County. Robert M. Martinez, Judge.  Affirmed.

Patricia J. Ulibarri, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Assistant Attorney General, Eric R. Reynolds and Allison H. Chung, Deputy Attorneys General, for Plaintiff and Respondent.

_____

Joshua Andrew Kellersberger was convicted of (1) assault by means likely to produce great bodily injury and (2) hit-and-run driving. On appeal, he challenges the sufficiency of the evidence; the adequacy of trial counsel's representation; a lay witness's opinion testimony; and the fairness of his trial. After reviewing the record, we find no error and affirm the judgment.

## FACTS

On the night of January 20, 2011, friends and relatives attended a birthday party for Quinn Rodriguez (Quinn) at a Glendora restaurant. Among the attendees were defendant Joshua Kellersberger; codefendant Bryan Beljak; Manny and Mary Rodriguez (parents of Quinn); Heather Thomas (girlfriend of Quinn); Eddie Borba; and Emily Wittkop (girlfriend of Borba).[1] The victim, Joseph Smith, arrived at the restaurant later and was seated at a different table with two friends.

During the course of the party, tensions arose between Beljak and Smith. As their voices escalated, the men were told to go outside because they were too loud. Smith attempted to calm the situation and apologized. Beljak was agitated and pacing. Mary Rodriguez and Emily Wittkop tried to separate the two men.

According to Wittkop, "Everyone was really intoxicated." Beljak urged Quinn to fight Smith, who had walked away from the restaurant toward his friend's parked car. Quinn pursued Smith and pushed the car door into him as he was about to enter the vehicle. After being struck by the car door, Smith "stepped up to Quinn, and they were about to fight." When Manny Rodriguez grabbed his son in a bear hug, Smith hit Quinn in the face. In return, Quinn knocked Smith over with a punch, and then ran away as other party attendees approached. A melee began, and eyewitness Wittkop was hit in the mouth. There were "a bunch of crazy, drunk people . . . all swinging at each other."

Beljak attacked Smith, punching Smith multiple times in the face. Smith was knocked out and crumpled onto the ground. Once Smith was on the ground, Beljak

---

[1] Codefendant Beljak is not a party to this appeal.

kicked Smith in the stomach and face some 10 to 15 times. Smith was bleeding from his nose and face. After another partygoer pulled Beljak away from Smith, Smith went to assist a teenaged friend who was fighting with defendant Kellersberger.

Kellersberger and Smith started fighting. Kellersberger punched Smith in the face and kicked him multiple times while Smith was on the ground. Kellersberger raised Smith's head up from the ground by sticking his fingers up Smith's nostrils, and hit Smith in the face with "powerful blows" at least five and possibly more than 10 times.

Wittkop heard Smith scream as he was being beaten by Kellersberger. Smith's entire face was bloodied. Eventually, Manny Rodriguez stopped Kellersberger's attack. Everyone piled into cars and left when they heard police car sirens. Kellersberger seemed dazed when the partygoers met up at the Rodriguez residence to discuss the fight and to wipe blood off of the participants. Wittkop testified that she had a clear memory and was not guessing at her answers to the questions.

Quinn's girlfriend Heather Thomas testified about the events of January 20, 2011. She is a long-time friend of Brian Beljak. Thomas saw Beljak punch one of Smith's friends inside the restaurant, causing words to be exchanged between Smith and Beljak. Thomas and others intervened, and the two men sat down. Smith took a deep breath and seemed fine. Beljak walked outside; when he returned, he was giving hard looks and "flexing" at Smith. Beljak and Smith walked outside.

From inside the restaurant, Heather Thomas saw Beljak and Smith yelling at each other. Some partygoers—including Mary Rodriguez, Emily Wittkop, and Thomas—went outside and tried to stop the two men from fighting. Beljak ignored their pleas for calm and was trying to charge at Smith. Thomas went inside the restaurant briefly to look for Quinn. When she came out, she saw Smith walking toward his friend's car. Thomas advised Smith and his friends that they should leave quickly. She could see the other partygoers coming up behind them.

Thomas heard Beljak tell Quinn that "These guys tried jumping me, fool." Thomas testified that this was a lie, because Smith and his friends did not attack Beljak. In response to Beljak's false accusation, Quinn hustled over to where Smith was standing

3

at the vehicle, even though Quinn's father Manny was trying to say that Beljak lied about being jumped. Thomas held out her hand to prevent Quinn from approaching Smith.

Quinn demanded that Smith come forward. Smith spit at Quinn, who was being held back by his father and Thomas, then struck Quinn with a slap to the side of the face and a push. Quinn pried himself away from those holding him. He hit Smith, who fell to the ground. Quinn hit Smith several times while Smith was on the ground, then Quinn took off running.

Thomas was frightened and entered her car, which was adjacent to the brawl that ensued. She saw Smith charge at and knock down Kellersberger. Smith kicked and punched Kellersberger, who was on the ground curled into a fetal position.

Thomas saw Beljak sock Smith "really hard" in the back of the head. Then Kellersberger hit Smith in the back of the head. Smith dropped to the ground, and Kellersberger "was just socking him, punching him like crazy. He went from that to kicking him and stomping him. He went from that to biting him all over his face." Kellersberger struck any part of Smith's body that he could lay his hands on. Smith attempted to get up from the ground during the attack, by grabbing Kellersberger's legs. Kellersberger fell and Smith kicked him multiple times. Manny Rodriguez separated the two. Kellersberger ran away, then returned to the fight and tackled Smith, hitting and kicking him. Smith's head made a thudding noise like a rock hitting the ground when Kellersberger tackled him.

While Smith was on the ground being beaten by Kellersberger, Thomas saw Beljak and Eddie Borba kicking and stomping Smith. She described the attackers as "seriously going crazy" during her taped police interview. At one point, Thomas saw Kellersberger bend over Smith and insert two fingers into Smith's nose while pushing Smith's forehead back with his thumb, "like a leverage to try to rip his nose off." She described it as a "fishhook" maneuver using "a ton of force." Kellersberger struck Smith in the face 10 times during the fishhook maneuver, according to Thomas.

Smith was screaming during the fishhook maneuver. In Thomas's opinion, it sounded "[l]ike somebody was being tortured, like his nose was getting ripped off of his

4

face, however that would feel, that's how he was screaming." Thomas was so upset watching Kellersberger harm Smith that she started to cry. Manny Rodriguez intervened and pulled Kellersberger's fingers out of Smith's nose. Despite being removed from Smith's nose, Kellersberger began "hitting [Smith] some more and biting him all over his face" and on the neck in "a chomp, chomp, chomp motion." Thomas saw Kellersberger bite Smith five to eight times while shouting profanities at Smith. Thomas saw blood all over Smith's face, hands, clothing and shoes.

While the biting was occurring, the sound of approaching police car sirens could be heard. Kellersberger ceased biting Smith and ran to his parked vehicle, but it was blocked by another car. Thomas saw Kellersberger ram his car twice into the vehicle that blocked his flight from the scene of the brawl. Thomas left before the police arrived.

The driver of the car that was rammed, Pamela Feldstein, testified that her Dodge Stratus was totaled by the impacts. Feldstein could see the "angry face" of a male driver, who took off without providing his name or insurance information. One of the arriving police officers heard the collision and saw a dark-colored Toyota speeding away from the parking lot. At the accident site, Feldstein found green and black car parts and a Toyota emblem, and gave them to the police. At Kellersberger's residence, police found a green Toyota with collision damage. The car parts found by Feldstein matched Kellersberger's vehicle perfectly. When the police arrested Kellersberger on February 2, 2011, his right hand was in a soft cast.

Joseph Smith testified that he went to the restaurant with two friends, to have dinner with the Rodriguez family and their friends. The Rodriguez group included defendants Beljak and Kellersberger. Beljak struck one of Smith's friends, then became enraged when Smith told him to stop. They went outside, and Smith hoped that Beljak would calm down. Instead, Beljak pulled off his shirt and an arm sling and became more aggressive. "At which point," Smith testified, "I walked away."

Smith waited by the car for his friends to pay the restaurant bill. Two minutes later, he was approached by a group, including Quinn. Quinn slapped Smith, while Mr. and Mrs. Rodriguez told Smith to leave, which is what he intended to do in any event.

5

Smith was then blindsided by someone on the right side of his head, then hit a second time by Quinn. Smith fell to the ground dazed after sustaining multiple blows to the head. He recalls being hit on the back and face, and kicked in the stomach, while on the ground. He felt his nose "pop" and blood rushed from it. He floated in and out of consciousness. Smith woke from a daze screaming, "He's biting me." There was excruciating pain as someone bit the right side of his throat. One of Smith's friends yelled, "Just run" to Smith so he ran. He was covered with blood. Smith could not see who kicked or punched him while he was on the ground. He does not recall approaching or hitting Kellersberger during the melee.

Smith was taken to a hospital where photos were taken of his injuries. There were ridge marks from bites on his throat and eyelid. The bites were specially treated to stop bleeding and avoid infection. He had reconstructive surgery on his nose, which was crushed. He continues to have black spots in his vision as a result of torn eye tissue.

**PROCEDURAL HISTORY**

Kellersberger was charged with assault by means likely to produce great bodily injury and misdemeanor hit-and-run. (Pen. Code, §§ 245, subd. (a)(1), 12022.7, subd. (a); Veh. Code, § 20002, subd. (a)). It was further alleged that Kellersberger served a prison term for car theft. A jury found Kellersberger guilty as charged. He admitted the prior prison term. The trial court sentenced Kellersberger to a total term of seven years, consisting of three years for the assault, a consecutive three years for the great bodily injury enhancement plus one year for the prison prior, and a concurrent 180 days for the hit-and-run.[2]

---

[2]     Beljak was convicted of felony assault and sentenced to three years in prison.

## DISCUSSION

### 1. Sufficiency of the Evidence

#### a. *Felony Assault Conviction*

Appellant contends that there is insufficient evidence to support his conviction for felony assault because the evidence shows that he was merely acting in self-defense. The jury was instructed on self-defense. As the trier of fact, the jury was free to reject—and did reject—appellant's claim that he acted in self-defense, after hearing several eyewitness descriptions of the affray. (*People v. Givens* (1960) 182 Cal.App.2d 75, 79-80 ["In weighing the evidence, the trier of fact was free to believe the account of the scuffle as related by the witnesses [ ] and to reject that of the appellant."]; *People v. Dinkins* (1966) 242 Cal.App.2d 892, 904.) In an assault prosecution, "the testimony of one witness is sufficient proof of the crime if he is believed by the trier of the facts." (*People v. Muse* (1961) 196 Cal.App.2d 662, 664.) The record is reviewed in the light most favorable to the judgment. (*People v. Jones* (2013) 57 Cal.4th 899, 960; *People v. Johnson* (1980) 26 Cal.3d 557, 578.)

Forcefully punching or kicking a person constitutes felony assault. (*People v. Roberts* (1981) 114 Cal.App.3d 960, 965; *People v. McDaniel* (2008) 159 Cal.App.4th 736, 748-749; *People v. Kinman* (1955) 134 Cal.App.2d 419, 421-422.) Wittkop and Thomas saw appellant kick and stomp Smith while Smith was on the ground, and saw appellant stick his fingers into Smith's nostrils, raise the victim's head from the ground and hit him repeatedly in the face using "powerful blows" (per Wittkop) and "a ton of force" (per Thomas). Both witnesses described the victim as screaming during this "fishhook" maneuver. His entire face was bloodied. Both witnesses saw Manny Rodriguez pry appellant's fingers from the victim's nose. Thomas then saw appellant bite the victim five to eight times on his face and neck. The victim's injuries were consistent with the eyewitnesses' descriptions of the attack.

Appellant did not stop his attack on Smith until police approached. In his haste to flee, appellant twice rammed into a driver who was blocking his exit, totaling her car. His reaction to the arrival of the police showed consciousness of guilt. When arrested,

7

appellant's hand was in a cast, an injury that the jury could attribute to his repeated blows to Smith's face.

Appellant attacks the credibility of Heather Thomas, whom he accuses of "being a liar and perjuring herself." He posits that Thomas and Wittkop "made appellant out to be the 'bad guy'" while minimizing the role of partygoers Beljak and Borba. At the same time, appellant relies on the supposedly unreliable testimony of Thomas to try to prove his theory of self-defense. Thomas's testimony showed that Smith charged at appellant, knocked him down, then kicked and punched appellant while the latter was on the ground curled into a fetal position. Appellant cannot have it both ways: he cannot claim a prosecution witness has no credibility while concurrently crediting the portion of her testimony that supports him.

During the preliminary hearing, Thomas denied that Kellersberger punched or bit the victim. Thomas explained to the jury that she repeatedly lied during the preliminary hearing because "I was scared." Thomas stated that she knows Kellersberger's "background," some of his friends threatened her, and she feared for her life. Thomas stated that she is telling the truth at trial because "Today I'm not scared." She added, with respect to all the discrepancies in her trial and pretrial testimony, "You can point them all out, sir, because I am not lying today. I was scared then and I am not scared now and I am not afraid to tell the truth that I lied."

The jury determines witness credibility, and reviewing courts do not reweigh witness credibility on appeal. (*People v. Ochoa* (1993) 6 Cal.4th 1199, 1206.) Defense counsel made every effort at trial to undermine the credibility of the prosecution witnesses, emphasizing the discrepancies in Heather Thomas's recountings of the events on the night of January 20, 2011. Notwithstanding defense counsel's best efforts, the jury accepted Thomas's explanations for the false testimony she gave during the preliminary hearing.

Thomas's trial testimony was consistent with the testimony of eyewitness Wittkop. Their testimony amply supported appellant's assault conviction. Appellant had the opportunity to present testimony from his friends at the birthday party brawl, to show

8

that someone else inflicted the bites in the photographs that the jury was shown at trial and caused the damage to Smith's nose. He did not do so, leaving the testimony of Wittkop and Thomas unrebutted.

### b. *Great Bodily Injury Enhancement*

Kellersberger maintains that the evidence is insufficient to support a finding that he personally inflicted great bodily injury on Smith. "Great bodily injury" means "a significant or substantial physical injury." (Pen. Code, § 12022.7, subd. (f).) The occurrence of great bodily injury is a factual question for the jury. (*People v. Cross* (2008) 45 Cal.4th 58, 64.)

Appellant agrees that Smith's broken nose constituted great bodily injury. His argument is that others—Quinn, Beljak and Borba—hit, stomped on, and kicked Smith before Kellersberger launched his attack. Appellant reasons that great bodily injury was inflicted by someone else, so he cannot be subjected to the enhancement.

The jury was instructed on great bodily injury and group assault.[3] When group assaults occur, it is difficult to trace a particular punch or kick to one assailant's fist or foot in the confusion. (*People v. Modiri* (2006) 39 Cal.4th 481, 496-497.) As a result, the Legislature allows punishment against all participants who inflict or contribute to the harm in a group assault. (*Id.* at pp. 497-499.) Culpability lies if the physical force

---

[3]    "If you conclude that more than one person assaulted Joseph Smith and you cannot decide which person caused which injury, you may conclude that the defendant personally inflicted great bodily injury on Joseph Smith if the People have proved that: 1. Two or more people, acting at the same time, assaulted Joseph Smith and inflicted great bodily injury on him; 2. The defendant personally used physical force on Joseph Smith during the group assault; AND 3A. The amount or type of physical force the defendant used on Joseph Smith was enough that it alone could have caused Joseph Smith to suffer great bodily injury; OR 3B. The physical force that the defendant used on Joseph Smith was sufficient in combination with the force used by the others to cause Joseph Smith to suffer great bodily injury. The defendant must have applied substantial force to Joseph Smith. If that force could not have caused or contributed to the great bodily injury, then it was not substantial." (CALCRIM No. 3160.)

applied by the defendant is "sufficient to produce great bodily injury either (1) by itself, or (2) in combination with other assailants." (*Id.* at p. 494.)

The jury was presented with sufficient evidence to find that Kellersberger personally applied enough force to cause great bodily injury, either alone or in concert with others. Wittkop estimated that Brian Beljak kicked the victim 10 to 15 times in the stomach and face while Smith was on the ground. After Beljak was pulled away, Kellersberger attacked Smith. Two eyewitnesses saw Kellersberger insert his fingers inside Smith's nose and pull the victim's head off the ground while inflicting powerful blows to his face, as if Kellersberger were trying to rip Smith's nose from his face. The victim screamed in pain during this "fishhook" maneuver.

Hearing this evidence, the jury could reasonably conclude that Kellersberger alone caused significant and substantial injury to Smith's nose with the fishhook maneuver and strong punches, amounting to great bodily injury. The jury could also find that appellant's actions, in combination with Beljack's, inflicted substantial injury, without assigning responsibility for the injury to a particular fist, foot or finger during the extended group assault on Smith. "[T]hough it might be difficult to link [the victim's] specific injuries to specific blows by defendant, the evidence showed that defendant personally applied physical force to [the victim] several times." (*People v. Dunkerson* (2007) 155 Cal.App.4th 1413, 1418.) "[T]hose who participate directly and substantially in a group beating should not be immune from a personal-infliction finding for the sole reason that the resulting confusion prevents a showing or determination of this kind." (*People v. Modiri*, *supra*, 39 Cal.4th at pp. 496-497.)

"[K]icking the head and torso of a largely defenseless man on the ground appears to us to be unmistakably an assault which a jury could reasonably find was likely to produce great bodily harm." (*People v. Roberts*, *supra*, 114 Cal.App.3d at p. 965 [victim kicked in the head and torso, causing cuts, bruises, a large welt and unconsciousness].) In addition, Smith suffered bites to his face and neck that caused bleeding, a high risk of infection and damage to his vision as a result of a bite on his eyelid. Kellersberger alone

was seen biting the victim. Defendant's vampire-like attack supports the jury's finding that he personally inflicted great bodily injury on Smith.

## 2. **Evidentiary Ruling**

At trial, Heather Thomas was asked what the victim's screams sounded like during Kellersberger's attack, "in your opinion." Defense counsel objected that the witness's opinion was irrelevant, vague and ambiguous, or speculative. The trial court allowed Thomas to testify that Smith sounded like someone "being tortured, like his nose was getting ripped off of his face" and like he was being murdered, causing Thomas to weep in distress. Kellersberger argues that Thomas "was not competent to express such an opinion" and in any event her opinion was speculative and irrelevant.

Evidentiary rulings are reviewed for an abuse of discretion. (*People v. Scott* (2011) 52 Cal.4th 452, 491; *People v. Thornton* (2007) 41 Cal.4th 391, 444.) "A lay witness may testify in the form of an opinion only when he cannot adequately describe his observations without using opinion wording." (*People v. Sergill* (1982) 138 Cal.App.3d 34, 40; *People v. Callahan* (1999) 74 Cal.App.4th 356, 380.) Lay witnesses who observe a victim may testify as to the victim's health, so persons of ordinary intelligence and experience who hear a victim's "groans and complaints" are competent to give an opinion about the extent of the suffering. (*People v. McAlpin* (1991) 53 Cal.3d 1289, 1307.)

Thomas's personal observation and description of the extent of Smith's pain and suffering during Kellersberger's fishhook maneuver is relevant to show the infliction of great bodily injury. Further, it disproves Kellersberger's self-defense theory: because Smith was screaming like a torture victim during appellant's attack, the testimony tends to show that appellant did not use "reasonable force." (See *People v. Moody* (1943) 62 Cal.App.2d 18, 21-22 [blows inflicted on an incapacitated person cannot be seen as reasonable force necessary to repel an attack].) Thomas's opinion helped explain her testimony that Kellersberger used "a ton of force." (See *People v. Kennedy* (2005) 36 Cal.4th 595, 621 [eyewitness could properly testify that the defendant "'was in a maniacin' mood, he was spun,'" meaning he felt "'[t]en feet tall and bulletproof'" and

"'above the law'" as it described the witness's perceptions of the defendant].) The trial court did not abuse its discretion by allowing Thomas to describe the severity of Smith's reaction to Kellersberger's attack because descriptions of anguish and suffering are within the realm of human experience. Thomas's description of Smith's pain did not amount to an opinion as to appellant's guilt. (See *People v. Prince* (2007) 40 Cal.4th 1179, 1227.)

### 3. Ineffective Assistance of Counsel

Appellant contends that he was inadequately represented at trial because defense counsel did not underscore Wittkop's preliminary hearing testimony that she heard Smith's nose "pop" when he was being attacked by Beljak. In appellant's view, had defense counsel emphasized Wittkop's preliminary hearing testimony the jury would have found that Beljak inflicted great bodily injury, not appellant. Appellant reasons that the omission deprived him of due process and a fair trial.

To succeed, appellant must show that (1) counsel's representation was deficient under an objective standard and (2) he was prejudiced. (*Strickland v. Washington* (1984) 466 U.S. 668, 687; *People v. Linton* (2013) 56 Cal.4th 1146, 1166; *People v. Ledesma* (1987) 43 Cal.3d 171, 215-218.) Counsel's representation is presumed to be within the range of professional assistance and defendant bears the burden of demonstrating that the representation was inadequate. (*People v. Dennis* (1998) 17 Cal.4th 468, 541; *In re Jones* (1996) 13 Cal.4th 552, 561; *People v. Mesa* (2006) 144 Cal.App.4th 1000, 1007.) There must be "no rational tactical purpose" for counsel's acts. (*People v. Lucas* (1995) 12 Cal.4th 415, 442.)

At trial, Wittkop testified that she saw Beljak kick Smith in the face 10 to 15 times, causing his nose to bleed. At the preliminary hearing, Wittkopp testified that she heard Smith's nose "pop" during Beljak's attack and saw that he was rendered unconscious.[4] Defense counsel pursued an objectively reasonable tactic by not refreshing

---

[4] Wittkop's preliminary hearing testimony showed that Beljak kicked Smith repeatedly in the face. A colloquy ensued: "Q. And you were right there, right? A.

12

Wittkop's memory with her preliminary hearing testimony. Kellersberger asserted that he acted in self-defense when he attacked Smith and was therefore not culpable for an assault. If his counsel had used Wittkop's preliminary hearing testimony, it would have eviscerated Kellersberger's defense: appellant could not credibly claim he was defending himself from someone who was already "knocked out" by Beljak.

In any event, there is no reasonable probability that a different result would have been obtained had defense counsel questioned Wittkop about her preliminary hearing testimony. Two eyewitnesses described Kellersberger's vicious attack on Smith, kicking the victim repeatedly in the face and body and trying to rip off the victim's nose with his fingers, while Smith was prone and floating in and out of consciousness. Kellersberger's fingers were pried from Smith's nose by Manny Rodriguez. Smith awoke from a daze because someone was biting him: only Kellersberger was seen biting Smith. Because this was a group assault, the prosecution only had to show that Kellersberger caused the injury alone or in combination with others. The unrefuted evidence shows that Kellersberger did, in fact, apply substantial force that could have caused Smith's great bodily injury.

## 4. Appellant Received a Fair Trial

Kellersberger points to the issues raised in the preceding sections of this opinion and contends that the cumulative errors he identified in his brief violated his due process rights. As discussed above, we have found no error in the record. Though appellant characterizes the case as "extremely close," it is anything but close. It is true that Beljak assaulted Smith first, and Beljak was convicted of assault. But Kellersberger's attack on Smith—coming when Smith was prone and dazed—was both inexplicable and barbaric. Two witnesses described Kellersberger's "fishhook" maneuver, a seeming attempt to rip the victim's nose from his face that provoked agonized screams. Kellersberger then bit

---

Yes. Q. He was bleeding profusely at that point in time, right? A. Yes. Q. He was bleeding from his nose, right? A. Yes. Q. Did you hear his nose pop? A. Yeah. Q. And was Joey [Smith] knocked out at that point in time? A. Yes."

the victim's face, throat and eyes, inflicting enough pain to cause Smith to regain consciousness.

Beyond a doubt, Kellersberger's theory of self-defense was untenable and his conviction was warranted by the evidence. A defendant is entitled to a fair trial, not a perfect trial. (*United States v. Hasting* (1983) 461 U.S. 499, 508-509; *People v. Marshall* (1990) 50 Cal.3d 907, 945.) Kellersberger received a fair trial.

## DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS.


BOREN, P.J.

We concur:


ASHMANN-GERST, J.


CHAVEZ, J.

14