136 N.J. Super. 484 (1975)
347 A.2d 1
STATE OF NEW JERSEY, PLAINTIFF-APPELLANT,
v.
JOSEPH PANDOZZI, DEFENDANT-RESPONDENT.
Superior Court of New Jersey, Appellate Division.
Argued September 23, 1975.
Decided October 7, 1975.
*485 Before Judges MATTHEWS, LORA and MORGAN.
Ms. Helen E. Szabo, Deputy Attorney General, argued the cause for appellant (Mr. William F. Hyland, Attorney General, attorney).
Mr. Lawrence Hurley argued the cause for respondent (Messrs. Lynch, Mannion, Lutz & Lewandowski, attorneys).
PER CURIAM.
Defendant was indicted for giving false information to law enforcement officers, in violation of N.J.S.A. 2A:148-22.1. Before trial he moved to dismiss the indictment, contending that his conduct was not proscribed by the provisions of the statute. The indictment was dismissed by Judge Morris who filed the following letter opinion:
"This is defendant's motion to dismiss an indictment charging him with a violation of N.J.S.A. 2A:148-22.1. The indictment charges that on May 24, 1972 defendant gave false information to two law enforcement officers with respect to the commission of certain crimes or purported crimes which are said to have taken place during his tenure as a member and as chairman of the Madison Township Planning Board. Defendant *486 contends that his statement to the officers was nothing more than an exculpatory denial and as such would not constitute conduct proscribed by this statute. Defendant further contends that under the facts of this case his prosecution would be violative of due process in that the effect is to strip him of the protection of the statute of limitations.
"The law enforcement officers were special agents of the State Commission of Investigation. They approached defendant in a somewhat informal manner at his place of business. They advised him generally of the subject matter of their inquiry and advised him of his constitutional rights. Defendant indicated that he was willing to answer their questions. The preliminary discussion involved a confirmation by defendant of facts and matters within the knowledge of the agents which were matters of public record, including the fact that between 1966 and 1970 he served as chairman of the Planning Board of Madison Township. When asked if he had ever been approached by anyone while on the planning board or had he ever approached anyone for any monies he denied it. This, the State contends, constitutes a violation of the statute in view of its evidence that on various dates between June 1, 1966 and September 30, 1968 defendant had solicited and received bribes from or shared bribe money with other persons. At the time of the interview the agents were armed with knowledge that the State Commission of Investigation had previously received sworn testimony with regard to these alleged occurrences, so that plainly defendant at the time of the interview was a target of the investigation.
"The statute in question provides as follows:
Any person who knowingly and willfully gives false information or causes false information to be given to any law enforcement officer or agency with respect to the commission of any crime or purported crime is guilty of a misdemeanor.
"To date there has been but one reported case in the State of New Jersey concerning this section, namely, State v. Hobbs, 90 N.J. Super. 146 (App. Div. 1966). It is not of *487 much help. There defendant gave a statement to the police in the course of a murder investigation in which he apparently sought to fix the blame on someone other than the person who actually committed the offense. In addition, he gave them a false address as his place of residence; he stated that he had witnessed the crime when in fact he had not, and he failed to identify a photograph of a person who he testified was personally known to him. Quite obviously, this sort of conduct is violative of the statute. What we had here, however, is something different.
"The so-called doctrine of the exculpatory no upon which defendant relies is well known in the federal courts. Whether it is viable in New Jersey is the question which this court must determine in resolving this facet of the motion. The State contends that the doctrine should not be recognized by this court, or, alternatively, that it be held not applicable in this case. The sense of the State's position is that when defendant was approached he was advised of his constitutional rights and voluntarily decided to waive them. Having done so, the officers thereafter had a right to rely upon the truth of his statements. The State contends that defendant was amply protected from the possibility of prosecution under the statute by exercising his choice of either remaining silent of telling the truth. Since he decided to speak and spoke falsely he thereby laid himself open to prosecution.
"The federal statute which has generated prosecutions leading to reported cases dealing with false information is found in 18 U.S.C.A. § 1001. It provides:
Whoever, in any matter within the jurisdiction of any department or agency of the United States knowingly and willfully falsifies, conceals, or covers up by any trick, scheme, or device, a material fact, or makes any false, fictitious or fraudulent statements or representations, or makes or uses any false writing or document knowing the same to contain any false, fictitious or fraudulent statements or entry, shall be fined not more than $10,000.00 or imprisoned not more than five years or both.
*488 "While the wording of § 1001 varies somewhat from that of N.J.S.A. 2A:148-22.1, the federal courts' interpretation of the former statute is nevertheless useful in construing the language of the latter. The federal courts, in situations factually similar to the case at bar, have developed an exculpatory no exception to § 1001. See generally U.S. v. Levin, 133 F. Supp. 88 (D.C. Colo. 1953); U.S. v. Stark, 131 F. Supp. 190 (D.C. Md. 1955); U.S. v. Davey, 155 F. Supp. 175 (S.D.N.Y. 1957). The Fifth Circuit, in Paternostro v U.S., 311 F.2d 298 (5 Cir.1962), held:
It is our feeling that the exculpatory no answer without any affirmative, aggressive or overt misstatement on the part of the defendant does not come within * * * § 1001. [at 309]
"The Ninth Circuit in U.S. v. Bedore, 455 F.2d 1109 (9 Cir.1972), added the following caveat:
[§ 1001] was not intended to embrace oral unsworn statements unrelated to any claim of the declarant to a privilege from the United States or to a claim against the United States, given in response to inquiries initiated by a federal agency or department, except, perhaps, where such a statement will substantially impair the basic functions entrusted by law to that agency. [at 1-11]
"Notwithstanding broad recognition of the exculpatory no doctrine in the federal courts, conflicting decisions have arisen with respect to the applicability of this exception to statements made to Internal Revenue Service agents. U.S. v. McCue, 301 F.2d 452 (2 Cir.1962); Paternostro v. U.S., supra.; U.S. v. Ratner, 464 F.2d 101 (9 Cir.1972). However, these cases are inapposite insofar as the case at bar is concerned since they involve statements which frustrate the lawful functions of an I.R.S. agent, i.e., the agent's duty to verify tax information submitted by taxpayers on their income tax returns, and which relate to claims against the United States Government, i.e., the amount of income tax due and owing.
*489 "The federal courts in fashioning an exculpatory no exception have been sensitive to the dangers inherent in a literal reading of § 1001. "[V]irtually any false statement sworn or unsworn, written or oral, made to a Government employee could be penalized [.]" U.S. v. Bedore, supra at 1110.
"Recently, in U.S. v. Erlichman, Criminal No. 74-116 [379 F. Supp. 291] (D.C.D.C. 1974), Judge Gerhard Gesell noted the absence in § 1001 of any of the procedural safeguards which are present under the general perjury statute, 18 U.S.C.A. 1621:
There is no requirement of an oath, no strict rule of materiality and no guarantee that the proceeding will be transcribed or reduced to memorandum. * * * In short, the F.B.I. interview may occur  as it did here  under extremely informal circumstances which do not sufficiently alert the person interviewed to the danger that false statements may lead to a felony conviction. * * *
"Identical considerations arise from a cursory reading of the language of N.J.S.A. 2A:148-22.1, and lead this court to a determination that the language of the statute must be read narrowly. State v. Tims, 129 N.J. Super. 399, 401 (App. Div. 1974). The absence of an oath requirement in the false information statute points to a legislative intent that the statute not be coextensive in scope with the perjury and false swearing statutes which do embody an oath requirement.
"The State relies in its brief on false swearing and perjury cases to buttress its assertions that a defendant has the right to assert his Fifth Amendment privilege against self-incrimination or he must tell the truth, and that prosecutions of exculpatory denials as false information crimes are analogous to prosecutions of exculpatory denials under oath as perjury or false swearing crimes. See State v. Falco, 60 N.J. 570 (1972); State v. Cattaneo, 123 N.J. Super. 167 (App. Div. 1973); State v. Kimbrough, 109 N.J. Super. 57 (App. Div. 1970); State v. Siegler, 12 N.J. 520 (1953); State v. Toscano, 13 N.J. 418 (1953); State v. *490 Engels, 32 N.J. Super. 1 (App. Div. 1954); State v. Borelli, 27 N.J. Super. 223 (Law Div. 1953).
"However, it is my view that in construing the scope of N.J.S.A. 2A:148-22.1 these cases are not analogous since they involve statements or denials made under oath or affirmation either by way of affidavit or testimony at a grand jury or in a court proceeding. The false information statute by its terms is not limited to statements made under oath. Because the solemnity of an oath is not present, the State cannot properly claim the same unqualified right to rely on statements made in the course of a criminal investigation as is the case with affidavits and sworn grand jury and trial testimony.
"The State argues that false denials to S.C.I. agents would severely hamper their fact-finding roles; that the agent-investigators must be able to rely on the truth of responses, and that defendant Pandozzi conceivably misled them. This argument is not persuasive under the facts here presented. As noted, the agents were aware of a considerable body of evidence against this defendant. That he was a target when interviewed is plain. In connection with the State's urging that a perversion of the investigatory process could result, the following comment of the court in the case of U.S. v. Davey, 155 F. Supp. 175 (D.C.N.Y. 1957), is worthy of note:
But can it be said that when an accused person, a potential defendant, a suspect, grants an agent of the F.B.I., an interview and in reply to incriminating questions, knowingly makes a negative answer when truth and morality, but not the law requires an affirmative reply, such answer perverts the authorized function of the Bureau? Is the authorized function of the Bureau to extract from the suspect only the truth or in view of the 5th Amendment proscribing compulsory self-incrimination to hear and record only such statements as the accused desires freely and voluntarily to make? [at 178]
"It seems evident that the intent of the Legislature was to prevent the waste in time, energy and expense involved *491 in having law enforcement officers running down false leads concerning criminal conduct. Doubtless the Legislature intended to circumscribe conduct which would frustrate or thwart the police function. As previously noted, an exculpatory denial by a person who is clearly a target of the investigation does not in any meaningful way contribute to the problems sought to be obviated. Certainly, if the target undertakes to give false information in a manner which goes beyond a simple denial of wrongdoing, he would then run afoul of the statute.
"There can be no doubt that were this defendant's case being decided by the federal courts, the motion would be granted. I agree with the concept that under the state statute the exculpatory no answer without any affirmative, aggressive or overt misstatement on the part of a defendant does not come within its proscription. Consequently, it is my conclusion that under the circumstances here presented there has been no conduct on the part of this defendant which would constitute a violation of the statute under which he has been indicted. I, therefore, grant defendant's motion to dismiss the indictment."
The judgment of the Law Division dismissing the indictment is affirmed for the reasons expressed in Judge Morris' opinion.