THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* CHARLES E. BROOKS *et al.*, Defendants-Appellants.

Second District   No. 76-45

Opinion filed August 16, 1977.

Ralph Ruebner, of State Appellate Defender's Office, of Elgin, for appellants.

Philip G. Reinhard, State's Attorney, of Rockford (Phyllis J. Perko, of Illinois State's Attorneys Association, of counsel), for the People.

Mr. JUSTICE SEIDENFELD delivered the opinion of the court:

The defendants were convicted in a bench trial of obstructing justice (Ill. Rev. Stat. 1973, ch. 38, par. 31—4)[1] and were sentenced to three years probation. Their appeal questions whether false statements to police as to the participation of themselves and others in a felony is an obstruction of justice under the statute; if so, whether the indictment was sufficient, and whether the crime was proved.

The indictments arose from an incident at a Rockford filling station which occurred on October 24, 1975. A car with three men and a woman pulled into the station and there was a disagreement between the station attendant, Dan Grimes, and the occupants. Trash was alternately thrown from the car and thrown back by Grimes several times. There was a further altercation and Grimes went into the station to call the police. When he came out and attempted to detain the car to get the license number Grimes broke its antenna as the car was driving away. One of the occupants of the car fired three shots, wounding Richard Schobinger, a friend of the station attendant.

From a description of a distinctive blue and white Ford, late 50's model, with the name "Brooks" on the windshield, given by the victims, the police identified a car answering the description shortly following the incident. They stopped it when they saw it pass a red light. Defendant Brooks was driving and Williams was a passenger, but there were no other persons in the car. The police found a pistol with three discharged

---

[1] The statute as pertinent states:

"§31-4. Obstructing Justice.) A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:

(a) ° ° ° furnishes false information ° ° °."

shells and two live cartridges in the cylinder on the street approximately 1½ blocks from the car. The car's antenna was broken.

After the police stopped the defendants, they were arrested and taken to the station. There the victims and several other eye-witnesses were unable to identify the defendants in a lineup. They were also unable to identify the defendants in court on the motion to suppress. However, at the suppression hearing one of the eye-witnesses, Robinson, identified both defendants. At trial, Robinson again identified both Brooks and Williams.

Both defendants were questioned after being given *Miranda* warnings and signing waivers. Brooks was asked whether he was at the station on the date of the occurrence. He answered that he was not. Asked whether he had been in a fight at a service station, he said that he had not. Asked if there had been other people in the car besides himself and Williams, he said no, just he and Williams. Brooks said he had only been in Rockford for about 10 minutes when he was stopped, was not in any gas station, didn't shoot anybody, didn't know of anybody that did shoot anybody, and didn't know about the gun. Williams similarly questioned said he didn't know anything about the incident, didn't do any shooting at anybody, that nobody in the car shot anybody and that there was nobody in the car but he and Brooks.

The grand jury declined to indict either defendant for attempted murder. However, it returned a two-count indictment. In count I Brooks and Williams were charged jointly with obstructing justice by knowingly furnishing false information "with intent to prevent the apprehension of an unknown person who shot Richard Schobinger * * *." Count II charged Brooks alone with committing "a battery on Richard Schobinger * * * while using a deadly weapon." Brooks was acquitted on the aggravated battery charge.

The defendants argue that since they were arrested, jailed and charged with a serious felony their protestations of innocence in response to police interrogation cannot be made the basis of a prosecution for obstructing justice.

The State argues that the statements of the defendants went beyond exculpatory denials of guilt and were affirmative representations that they had no knowledge of the Schobinger shooting, made with intent to prevent the apprehension of the one who did the shooting.

That the defendants furnished false information to the interrogating officers is clear. Defendants also concede that the obstruction of justice statute does not, on its face, specifically exempt narrow denials of guilt from its coverage. Nevertheless, we must agree with defendants that in the factual context of the record before us, the statute was not intended to sustain the charge brought.

There do not appear to be any reported cases in Illinois involving a similar prosecution for furnishing false information although the obstruction of justice statute has long been a part of Illinois law. (See Ill. Ann. Stat., ch. 38, par. 31—4, Committee Comments at 741 (Smith-Hurd 1970).) While this does not necessarily speak to the legislative intention that the statute not be applied as it was here, caution is reflected in affirming its use against a defendant in a criminal prosecution whose denial of personal involvement as well as involvement of another is intertwined.

At the time the answers were made which formed the basis for the conviction each defendant had been charged by complaint with the offense of attempt murder of Richard Schobinger. The defendants were expressly told that they were being questioned about the gas station shooting. Obviously defendants could be charged with the shooting by another on accountability grounds. Truthful answers that the shooting was the act of an accomplice would necessarily inculpate defendants on the attempt murder charge. Similarly any truthful admission as to the gun or the presence of the one who used it at the scene would have implicated defendants.

If all false answers or false statements which a defendant utters intending to exculpate himself against a charge of crime and to prevent his prosecution but which also prevents the apprehension of another person are within the statute, the convictions must stand. We conclude, however, that the legislature did not intend this broad result.

Statutes in other jurisdictions which have the similar purpose of punishing one who knowingly or willfully gives false information to a police officer with the intention of misleading him in the performance of his official duties have been generally construed to exclude prosecution for statements made by a defendant in defense of an accusation of crime.

In *State v. Pandozzi*, 136 N.J. Super. 484, 347 A.2d 1 (1975), the indictment charged defendant with giving false information to law enforcement officers under a statute which provided:

> "Any person who knowingly and willfully gives false information or causes false information to be given to any law enforcement officer or agency with respect to the commission of any crime or purported crime is guilty of a misdemeanor." (136 N.J. Super. 484, 486, 347 A.2d 1, 2.)

Defendant gave false information to the officers with respect to the commission of alleged crimes during defendant's tenure as a member and chairman of the township planning board. Defendant was approached at his place of business, advised generally of the subject matter of the inquiry and advised of his constitutional rights. He indicated he was willing to answer the officers' questions. He denied that he had solicited and received bribes, which was contrary to sworn testimony which the

officers previously had from other persons involved. The trial court dismissed the charge and this was affirmed on appeal. The court reasoned (page 4) that the language of the statute must be read narrowly, that the absence of an oath requirement pointed to a legislative intention that the statute not be co-extensive in scope with the perjury and false swearing statute. It further noted that an exculpatory denial by a person who is clearly a target of an investigation does not "in any meaningful way contribute to the problem sought to be obviated." It observed, however, that if the "target" undertook to give false information in a manner which went beyond a simple denial of wrongdoing the statute would be involved.

While noting that under the Wisconsin statute one could be convicted for obstructing an officer where efforts to intentionally mislead him were involved, the court in *Peters v. State*, 70 Wis.2d 22, 29, 233 N.W.2d 420, 424 (1975), stated that before such charge should be made under the statute the district attorney "should have sound reasons for believing that statements made by a suspected defendant to the police in terms of an alibi were knowingly and intentionally made for the purpose of deceiving and misleading the police, and not simply out of a good-faith desire to defend against an accusation of crime."

The parties have also called our attention to various federal decisions interpreting title 18, section 1001 of the United States Code which generally provides that in any manner within the jurisdiction of any department or agency of the United States, the party knowingly and willfully falsifies a material fact or makes any false or fraudulent statements shall be guilty of the crime. While the statute if read literally would include any willful false statement made to a government officer it has not been interpreted that broadly. We do not find it useful to analyze the apparently somewhat conflicting decisions under the statute issued by the various courts of appeal. However, it appears that the statute has ordinarily not been applied to statements made to government agents acting in a purely police investigative capacity. Generally, the statute is applied to cases where the governmental agency has power to dispose of the issue under investigation or to regulate the activities of the person making the statement which function would otherwise be impeded without the sanction of the criminal penalty under the statute. (See Annot., 1 A.L.R. Fed. 370, 371-72 (1969). See also *United States v. Stoffey*, 279 F.2d 924, 926 (7th Cir. 1960). See also *State v. Pandozzi*, 136 N.J. Super. 484, 488, 347 A.2d 1, 3 (1975).) *United States v. Goldfine*, 538 F.2d 815 (9th Cir. 1976), cited by the State as additional authority, is illustrative of the distinction. In *Goldfine*, the false answers were made to drug enforcement agents by pharmacists who were subject to regulation by the agency. The investigation was related to a claim of the declarant to a

privilege from the United States made to agents of a regulatory agency. (528 F.2d 815, 821.) Compare *United States v. Bedore*, 455 F.2d 1109 (9th Cir. 1972).

■■ We conclude that the Illinois obstruction of justice statute (Ill. Rev. Stat. 1973, ch. 38, par. 31—4) similarly excepts the exculpatory denials falsely made by these defendants in answer to police questioning within the narrow circumstances of this record. The answers were made to the police at a time when defendants were charged by complaint with an attempted murder. They were clearly among the targets of an investigation of a shooting at the gasoline station. Truthful answers would have amounted to a confession of guilt.

■■ In so holding, we do not thereby exclude the possibility that under other and different circumstances a defendant may be in violation of the statute if his answers to police questioning go beyond the limits of his own involvement in the crime charged either directly or by accountability and therefore beyond his own denial of wrongdoing. Beyond those limits a defendant once he has voluntarily agreed to make a statement has no privilege to intentionally mislead the police or to withhold information as to the crimes of others which are not inextricably connected with the charge against him.

The judgments are reversed.

Reversed.

NASH and WOODWARD, JJ., concur.