**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Willie J. TIPTON, Defendant–Appellant.**

No. 92–4138.

United States Court of Appeals,
Seventh Circuit.

Argued June 10, 1993.

Decided Aug. 27, 1993.

James E. Beckman, argued, Office of the United States Attorney, Springfield, IL, for plaintiff-appellee.

Charles H. Delano, IV, argued, Springfield, IL, for defendant-appellant.

Before CUDAHY and RIPPLE, Circuit Judges, and ALDISERT, Senior Circuit Judge.[*]

RIPPLE, Circuit Judge.

This matter is before us on the appellant Willie J. Tipton's direct appeal from his criminal conviction. Mr. Tipton pled guilty to one count of possession with the intent to distribute a substance containing cocaine base. *See* 21 U.S.C. § 841(a)(1) (1988). His plea was conditioned on the preservation of his right to appeal the denial of his motion to suppress both the statements made during the traffic stop and the cocaine that was seized from him following his arrest. The denial of the motion forms the basis for this appeal. For the reasons that follow, we affirm the judgment of the district court.

[*] The Honorable Ruggero Aldisert, Senior Circuit Judge for the Third Circuit, is sitting by designation.

# I

## BACKGROUND

On March 20, 1992, Officers Bennett and Kincaid of the Springfield, Illinois Police Department stopped a silver Ford Thunderbird because no license plates were visible on either the front or the back of the car. In fact, a temporary license sticker had partially fallen off the inside of the rear window and was lying on the back shelf but was not readily visible. The officers approached the car and asked the driver for identification. The driver said that he owned the vehicle, identified himself as Willie Tipton, and gave a birthdate. The officer noticed, however, that the name on the temporary sticker was Jimmie Graham. The driver then offered a notice to appear document bearing the name of Willie Tipton, but the officer noted that the birthdate on that document did not match the birthdate that the driver had initially given. These discrepancies gave rise to further questioning. The driver then identified himself as Jimmie Tilton, but a computer check revealed no record on file under that name. The driver then called himself Jimmie Bruce Graham, but this name likewise was not on file.

While Officer Kincaid was questioning the driver, Officer Bennett asked the passenger to identify himself. The passenger said that his name was Dennis Bankhead, but the computer revealed no file under this name. The passenger then changed the birthdate that he had given to the officer, but this change was unavailing because there was no file under that name on record. After fifteen or twenty minutes, the passenger said that his name was Willie Tipton.

The occupants of the car said that they were staying at a local motel.[1] When the officers checked on this story, the desk clerk at the motel told them that Willie Tipton was registered there. The clerk then entered the room of his own accord and found a pager, a portable telephone, and what appeared to be a marijuana cigarette and crack cocaine. When the clerk told the officers about the

contents of the room, the officers obtained permission from the Assistant State's Attorney to remove the suspected drugs and related items from the room. They then returned to where the Thunderbird had been detained and arrested the occupants, who now identified themselves as Jimmie Graham (the driver) and Willie Tipton (the passenger).

Graham told the officers that the contents of the room were his, and he was arrested on various charges related to the drugs found in the room. Mr. Tipton was arrested for obstruction of justice under state law and was transported to the local police station. When Mr. Tipton was removed from the back seat of the squad car, a search of that car revealed crack cocaine, and he was then charged with a drug offense. Subsequently, Mr. Tipton filed a motion to suppress all statements made and evidence collected as the fruit of an illegal arrest, but the motion was denied.

# II

## ANALYSIS

### A. Standard of Review

We review the denial of a motion to suppress only for clear error. *United States v. Rice*, 995 F.2d 719, 722 (7th Cir.1993); *United States v. Spears*, 965 F.2d 262, 269 (7th Cir.), *cert. denied,* — U.S. ——, 113 S.Ct. 502, 121 L.Ed.2d 438 (1992). A finding is clearly erroneous only if the reviewing court, on the basis of all of the evidence, is left with the firm conviction that a mistake has been made. *United States v. Soria*, 965 F.2d 436, 439 (7th Cir.1992). " '[W]e give particular deference to the district court that had the opportunity to hear the testimony and observe the demeanor of the witnesses.' " *United States v. Withers*, 972 F.2d 837, 841 (7th Cir.1992) (quoting *United States v. Edwards*, 898 F.2d 1273, 1276 (7th Cir.1990)).

---

1. They also said that they had been visiting friends but could not remember their friends' names or where they lived.

### B. Officers' Testimony

■ Mr. Tipton first argues that the district court erred when it accepted the sworn testimony of the officers at the hearing, saying "I must rely upon their sworn testimony." Tr. at 68. Mr. Tipton reads this statement to suggest that the court felt it was compelled to accept the officers' sworn testimony despite Mr. Tipton's attempts to impeach them with a police report that varied in some respects. The police report stated that the officers saw the improperly affixed sticker prior to questioning the occupants, but the sworn testimony was that the driver informed the officers of the sticker after questioning had commenced.

Mr. Tipton acknowledges that the district court is obliged to assess the credibility of the witnesses. We believe that he has extracted the court's comment, and more particularly the word "must," out of context and misconstrues its import. In fact, in denying the motion to suppress, the district court commented that the police reports themselves were not admissible into evidence, but could be used (and were used) only to refresh memory and for impeachment purposes. On a reading of the entire transcript, we believe that the district court simply chose to believe the sworn testimony of the officers and to give less credence to Mr. Tipton's attempts to impeach the officers. This the court is entitled to do. The comment that he "must" rely on the sworn testimony reflects the district court's determination that the sworn testimony is the version it found more worthy of credence.

### C. Reasonable Suspicion to Stop

■ Relying on the police report rather than the officers' testimony, Mr. Tipton contends that, once the officers saw the sticker, they no longer had reasonable suspicion to question the occupants. Police officers are justified in conducting a brief investigative *Terry* stop if an officer is "able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry v. Ohio,* 392 U.S. 1, 21, 88 S.Ct. 1868, 1880, 20 L.Ed.2d 889 (1968); *accord United States v. Adebayo,* 985 F.2d 1333, 1339 (7th

Cir.), *cert. denied,* —— U.S. ——, 113 S.Ct. 2947, 124 L.Ed.2d 695 (1993); *Withers,* 972 F.2d at 841. The Supreme Court has offered guidance with respect to what constitutes such reasonable suspicion:

> [T]he totality of the circumstances—the whole picture—must be taken into account. . . .
>
> The process does not deal with hard certainties, but with probabilities. Long before the law of probabilities was articulated as such, practical people formulated certain common-sense conclusions about human behavior; jurors as factfinders are permitted to do the same—and so are law enforcement officers.

*United States v. Cortez,* 449 U.S. 411, 417–18, 101 S.Ct. 690, 695, 66 L.Ed.2d 621 (1981). In *United States v. Sokolow,* 490 U.S. 1, 7, 109 S.Ct. 1581, 1585, 104 L.Ed.2d 1 (1989), the Court reminded us that reasonable suspicion requires more than a mere "hunch," but is a measure of suspicion less demanding than that required for probable cause. *Id.* (quoting *Terry,* 392 U.S. at 27, 88 S.Ct. at 1883). In addition, the Fourth Amendment is no bar to the police "stopping and questioning motorists when they witness or suspect a violation of traffic laws, even if the offense is a minor one." *United States v. Mitchell,* 951 F.2d 1291, 1295 (D.C.Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1976, 118 L.Ed.2d 576 (1992).

Here the officers observed that no license plates were visible at either the front or the rear of the vehicle. They also testified at the hearing that they had stopped the Thunderbird in an area of car dealerships where vehicle theft was prevalent. The driver's failure to display prominently a registration sticker, alone, would provide an officer with reasonable suspicion sufficient to justify, at the very least, an investigatory stop. *See United States v. Rivera,* 906 F.2d 319, 321 (7th Cir.1990) (using objective standard for assessing whether the circumstances gave rise to reasonable suspicion). Illinois law requires that registration plates be affixed to a car and the absence of such indication of registration justifies a stop. *See* S.H.A. 625 ILCS 5/3–413 (1993); *People v. Perry,* 204 Ill.App.3d 782, 150 Ill.Dec. 88, 91, 562 N.E.2d

618, 621 (1990). Nor were the officers obliged to abort the stop even if they had noticed the improperly affixed sticker prior to questioning. A driver with a temporary sticker is obliged to display the sticker prominently at all times, and in this case the sticker was not readily visible. Furthermore, after the officers had properly stopped the vehicle to investigate the lack of visible registration plates, the occupants themselves, through their own lack of candor, provided additional bases for further investigation.

### D. *Probable Cause to Arrest*

■ The most intrusive encounter between a law enforcement officer and a citizen is the full arrest, which requires that an officer have probable cause to believe that a person has committed or is committing a crime. *See Dunaway v. New York*, 442 U.S. 200, 208 n. 9, 99 S.Ct. 2248, 2254 n. 9, 60 L.Ed.2d 824 (1979) (citing *Brinegar v. United States*, 338 U.S. 160, 175–76, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)); *United States v. Valencia*, 913 F.2d 378, 382 (7th Cir.1990) ("Probable cause involves a practical, common sense determination about whether, given all the circumstances present, it is reasonably probable that a person has committed or is committing an offense."). Mr. Tipton argues that the officers lacked probable cause to arrest him for obstruction of justice. His first argument is that, because the car bore a temporary sticker, reasonable suspicion for the stop fell away and the stop was therefore improper. We have rejected this argument above. No further discussion is warranted.

■ Mr. Tipton also asserts that giving false names cannot constitute the basis for an obstruction of justice charge because of the "exculpatory denial doctrine." *See People v. Brooks*, 51 Ill.App.3d 800, 9 Ill.Dec. 802, 367 N.E.2d 236 (1977). He argues that, under this doctrine, he could not be prosecuted for obstruction of justice by giving a false name to investigating officers because giving his true name would have constituted an admission of guilt that he had loaned his driving document to Graham. Such an act, he notes, is a misdemeanor under S.H.A. 625 ILCS 5/6–301 (1993).

The government maintains that the fact that Mr. Tipton gave the officers a false name, first in conjunction with one birthdate and then in conjunction with a different false birthdate, in combination with the officers' suspicions that the car might have been stolen in a high-theft part of town, gave them probable cause to believe that Mr. Tipton had obstructed justice. Indeed, at the time of the arrest, the officers had no confidence that Mr. Tipton had revealed his true name. By offering false identities, Mr. Tipton was effectively preventing apprehension and obstructing the prosecution of himself or Graham. The government also submits that properly identifying oneself to a police officer in an investigatory stop situation cannot be construed as an admission of guilt for purposes of the exculpatory denial doctrine, and that the doctrine applies only when a defendant has been charged with an offense.

We begin our assessment of this contention by analyzing the relationship of the exculpatory denial doctrine to the offense of obstruction of justice under Illinois law. Obstruction of justice occurs when a person knowingly furnishes false information with the intent to prevent the apprehension or obstruct the prosecution of any person. *See* S.H.A. 720 ILCS 5/31–4 (1993). The contours of the "exculpatory denial doctrine" remain vague and indistinct. The basic definition was set forth in *People v. Gerdes*, 173 Ill.App.3d 1024, 123 Ill.Dec. 535, 540, 527 N.E.2d 1310, 1315 (1988). There the court stated that the doctrine provides that an individual may not be prosecuted for obstructing justice "for falsely denying to police or investigative authorities (1) that he was involved in a crime, or (2) that some other person was involved in a crime and that crime is inextricably connected with the crime against him." In *Brooks*, 9 Ill.Dec. at 804, 367 N.E.2d at 238, the court reversed an obstruction of justice conviction because it determined that, following their arrest for attempted murder, the appellants' statements denying any knowledge about the incident were merely exculpatory. The grand jury did not indict them for the attempted murder but did indict them for obstruction of justice occasioned by their denials. The *Brooks* court characterized their denials as efforts to defend against an accusation of a crime: "The answers were made to police at

a time when defendants were charged by complaint with an attempted murder. They were clearly among the targets of the investigation." *Id.* 9 Ill.Dec. at 805, 367 N.E.2d at 239.

However, in other cases, the scope of this exculpatory denial doctrine has been read quite narrowly by the Illinois courts. *People v. Remias,* 169 Ill.App.3d 309, 120 Ill.Dec. 195, 197, 523 N.E.2d 1106, 1108 (1988), is especially instructive. In *Remias,* the defendants were stopped for traffic offenses and questioned about their identities. They provided false names and were charged and convicted for attempting thereby to obstruct justice. On appeal, their arguments in reliance on *Brooks* were unavailing. The *Remias* court held that "the narrow circumstances" in *Brooks* that justified use of the doctrine did not require reversal in the instant case because in *Brooks* charges had already been filed against the defendants and they were "being questioned about their involvement in an established offense, not merely being asked for identifying information such as their names." *Remias,* 120 Ill. Dec. at 197, 523 N.E.2d at 1108; *see also People v. Toolen,* 116 Ill.App.3d 632, 72 Ill. Dec. 41, 55, 451 N.E.2d 1364, 1378 (1983) (declining to use the doctrine when the defendant provided affirmative falsehoods to the grand jury to avoid prosecution because his conduct went beyond mere denials).

This case law hardly makes clear that Illinois would make available the defense of "exculpatory denial" to someone in Mr. Tipton's situation. His statement was not the simple denial of a charge. Indeed, no charges had yet been leveled against him. The police officers were merely undertaking a routine identity check. We also note that, by merely giving his proper name, Mr. Tipton would not automatically have inculpated himself. The statute proscribes only a situation in which one willingly allows another to use a driver's permit. *See* S.H.A. 625 ILCS 5/6-301 (1993).[2]

 Under the circumstances here, a reasonably prudent officer would have believed that there was probable cause to conclude that the crime of obstruction of justice had been committed. Probable cause exists when "the facts and circumstances within [the officers'] knowledge [are] sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Beck v. Ohio,* 379 U.S. 89, 91, 85 S.Ct. 223, 224, 13 L.Ed.2d 142 (1964). We do not believe that the arresting officers lacked probable cause to arrest Mr. Tipton because of the possibility that he might have been able to invoke successfully such an ambiguous defense to the charge. *Cf. Michigan v. De Fillippo,* 443 U.S. 31, 38, 99 S.Ct. 2627, 2632, 61 L.Ed.2d 343 (1979) ("A prudent officer, in the course of determining whether respondent had committed an offense under all the circumstances shown by this record, should not have been required to anticipate that a court would later hold the ordinance unconstitutional."). It was certainly "not readily discernable to a police officer making arrests," *Radich v. Goode,* 886 F.2d 1391, 1398 (3d Cir.1989), that this exculpatory denial defense would apply. "[W]e cannot impose upon a police officer ... the duty to correctly predict how a court will answer this unresolved and complex legal issue." *Id.*[3]

Consequently, we hold that there is no basis for concluding that the district court was clearly erroneous in denying the motion to suppress.

### Conclusion

For the foregoing reasons, we affirm the judgment of the district court.

AFFIRMED.

---

**2.** The extension of the doctrine to such situations would have serious ramifications for criminal law enforcement. There is no indication from the Illinois courts that such an extension is intended.

**3.** *Cf. Brinegar v. United States,* 338 U.S. 160, 175, 69 S.Ct. 1302, 1310–11, 93 L.Ed. 1879 (1949)

("In dealing with probable cause, however, as the very name implies, we deal with probabilities. These are not technical; they are the factual and practical considerations of everyday life on which reasonable and prudent men, not legal technicians, act. The standard of proof is accordingly correlative to what must be proved.").