46 F.3d 1134
 NOTICE: Seventh Circuit Rule 53(b)(2) states unpublished orders shall not be cited or used as precedent except to support a claim of res judicata, collateral estoppel or law of the case in any federal court within the circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Victor M. BARDNEY, Defendant-Appellant.
 No. 93-4037.
 United States Court of Appeals, Seventh Circuit.
 Argued Oct. 6, 1994.
Decided Feb. 1, 1995.
Rehearing Denied March 3, 1995.
 
 Before COFFEY, MANION and KANNE, Circuit Judges.
 
 ORDER
 
 1
 Bardney appeals his conviction and sentence imposed by the district court. Bardney first claims that the district court erred in its decision to admit incriminating statements that Bardney made to the authorities after he was arrested. Bardney maintains that he did not understand his Miranda rights and therefore it was impossible for him to voluntarily waive them. Additionally, Bardney asserts that the district court's decision not to hold an evidentiary hearing on the issue is error and necessitates overturning his conviction.
 
 
 2
 A district court does not need to hold an evidentiary hearing on a motion to suppress unless material facts are in dispute. United States v. Randle, 966 F.2d 1209, 1212 (7th Cir.1992). The defendant has the burden of showing that there is such a factual dispute; vague, conclusory allegations do not suffice to create a factual issue. Id. Bardney's affidavit, filed with his motion to suppress, did not create a factual issue which required a hearing to resolve. In fact, the government's proffer of testimony in its opposition to the motion to suppress was merely a more detailed reiteration of Bardney's affidavit--minus Bardney's conclusory allegations that, "the Accused did not understand or comprehend the words explaining his rights under Miranda," and "during the Accused's encounter with Grobe and Ibanez the Accused did not understand his rights under Miranda." No factual dispute confronted the district court, and it was within its discretion to decide the motion on the uncontroverted facts before it, without a hearing.
 
 
 3
 Moving to the district court's denial of Bardney's motion to suppress his incriminating statement based on his alleged involuntary waiver of his Miranda rights,[1] we review the denial for clear error. United States v. Tipton, 3 F.3d 1119, 1121 (7th Cir.1993). "A finding is clearly erroneous only if the reviewing court, on the basis of all the evidence, is left with the firm conviction that a mistake has been made." Id.
 
 
 4
 Before commencing custodial interrogation, the police must inform a suspect that he has certain rights, among them the right to remain silent and the right to have an attorney present during interrogation. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602 (1966); United States v. LaGrone, No. 93-3383, 1994 WL 715284 (7th Cir.1994). In order for the government to introduce a statement that was elicited through custodial interrogation, it must prove, by a preponderance of the evidence, that the defendant both voluntarily and knowingly waived his Miranda rights. Colorado v. Connelly, 479 U.S. 157, 168-69, 107 S.Ct. 515, 522-23 (1986); United States v. Hocking, 860 F.2d 769, 773-74 (7th Cir.1988). In order for a statement to be involuntary, the police must have acted coercively. See Connelly, 479 U.S. at 166-67, 107 S.Ct. at 521; United States v. Buckley, 4 F.3d 552, 559 (7th Cir.1993). Moreover, a suspect need not have a full appreciation of the ramifications of waiving his rights for the waiver to be knowing. See Connecticut v. Barrett, 479 U.S. 523, 530, 107 S.Ct. 828, 832-33 (1987); Perri v. Director, Dept. of Corrections of Ill., 817 F.2d 448, 452 (7th Cir.1987). Bardney presents no evidence of coercion, and that the officers read the defendant his rights multiple times, that he acknowledged that he understood the rights and subsequently waived them (especially when done in writing) supports a conclusion that the defendant knowingly waived his rights.
 
 
 5
 Bardney attempted to rebut this finding by stating that he "has a limited education and has a serious comprehension problem," and that he "is functionally illiterate and he depends on others to read and assist him with understanding concepts."[2] However, he was not forced to resort to his reading skills to understand his rights. After Agent Ibanez read Bardney his rights and Bardney stated that he understood them, Ibanez asked Bardney to read the advice of rights form. Bardney responded that he could not read. Ibanez went through, line by line, the advice of rights form again, asking Bardney if he understood each line. Bardney responded that he did and initialed each line and thereafter signed the form, indicating he was waiving his rights. Later, Agent Grobe again advised Bardney of his Miranda rights, and Bardney again stated that he understood his rights and wished to waive them and talk to the agents. He then made an incriminating statement. The district court did not commit clear error by concluding that Bardney understood his Miranda rights and voluntarily waived them.
 
 
 6
 Bardney next claims that the district court erred by denying his motion to identify and produce two of the DEA's cooperating individuals (CIs). Bardney argues that the CIs may have testified that he was not in fact the person that was in on the buy. In Rovario v. United States, 353 U.S. 53, 77 S.Ct. 623 (1957), the Supreme Court held that the needs demonstrated by the defendant must be balanced against the government's interest in protecting the flow of information and the informant's interest in avoiding danger and harassment. Bardney first moved for identification and production of the government's CIs in February 1993. He made no showing in his motion, as is required by Rovario, as to why identification was necessary. In response, the government pointed out the defect in Bardney's motion. On March 10, 1993, the district court denied Bardney's motion for identification of the government's CIs.
 
 
 7
 From that time until the middle of trial, Bardney failed to supplement his motion by explaining why the identities of the CIs were necessary. Then, on the 2nd day of trial, Bardney attempted to obtain the identities of the CIs through cross-examination of Sergio Garcia. At side bar, Bardney's counsel claimed that his defense was misidentification and that if put on the stand, the CIs may testify that Bardney was not at the buy. The district court ruled that under Rovario, the balance still weighed in favor of the keeping the CIs' identities secret.
 
 
 8
 Regardless of the merits of Bardney's argument--which we find suspect--he cannot now complain, for the government gave Bardney an avenue to obtain the necessary information and Bardney simply did not follow it. The names of the CIs were revealed at side bar, and the next day the AUSA gave Bardney's counsel the name and phone number of the attorney that was representing the CIs. Bardney's counsel allegedly called the attorney and left a message, but made no further efforts. Bardney could have subpoenaed the CIs; he failed to do so. Thus the government fulfilled any responsibility it might have had under Rovario.
 
 
 9
 Bardney also claims that the trial court erred in admitting evidence of Bardney's failure to file income tax returns from 1990 through 1992. The evidence admitted showed that Bardney had no legitimate source of income from 1990 through 1992. As we have previously held, evidence of the defendant's possession of large amounts of cash, especially when coupled with evidence that the defendant had no legitimate source of income, is probative as to the defendant's knowledge, intent and lack of mistake in a narcotics case. See United States v. Briscoe, 896 F.2d 1476, 1500 (7th Cir.1990). The trial court did not err in admitting the evidence of Bardney's failure to file income tax returns.[3]
 
 
 10
 Bardney similarly argues that the district court erroneously admitted evidence, under Federal Rule of Evidence 404(b),[4] of a 1989 drug raid of an apartment he occupied. We will reverse a trial court's decision to admit 404(b) evidence only for clear abuse of discretion. Id. at 1499. We use a four-part test for admission of evidence under Rule 404(b):
 
 
 11
 (1) the proffered evidence must be relevant to a matter in issue other than the defendant's propensity to commit the charged crime; (2) the prior bad act must be similar in nature and close in time to the crime charged; (3) the prosecution must establish that the defendant in fact committed the prior bad act; (4) and the probative value of the evidence must not be outweighed by its prejudicial effect.
 
 
 12
 See, e.g., United States v. Goodapple, 958 F.2d 1402, 1406-07 (7th Cir.1992). In this case, the evidence of Bardney's presence at the apartment during the raid is relevant for two reasons. First, because conspiracy to possess and distribute cocaine, Count I of the indictment, is a specific intent crime, the evidence was relevant to Bardney's intent, knowledge and lack of mistake. Second, because the evidence presented also showed that Bardney's codefendant, Spinks, was present during the raid, it was relevant to show a criminal relationship between the two. See United States v. Hartmann, 958 F.2d 774, 788 (7th Cir.1992).
 
 
 13
 The evidence was sufficiently similar and close in time to the crime charged; drugs, weapons and large sums of cash were found at both scenes and the raid occurred only three years prior to the charged occurrence. United States v. Chamison, 760 F.2d 798, 807 (7th Cir.1985).
 
 
 14
 The government presented sufficient evidence for the jury to conclude by a preponderance of the evidence that the prior act occurred. See Huddleston v. United States, 485 U.S. 681, 690, 108 S.Ct. 1496, 1501 (1988); United States v. York, 933 F.2d 1343, 1352 (7th Cir.1991). An officer that participated in the raid testified to Bardney's and Spinks' presence during the raid and to the presence of drugs, money and weapons. Moreover, the district court allowed Bardney to cross-examine the witness concerning the raid.[5]
 
 
 15
 Finally, the district court determined that the probative value of the evidence was not outweighed by the danger of undue prejudice, and we agree. We find no abuse of discretion in the district court's admission of the 1989 raid evidence.
 
 
 16
 As the balance of Bardney's claims are wholly without merit, we decline to address them. Bardney's conviction and sentence are AFFIRMED.
 
 
 
 [1]
 Bardney claims that he did not voluntarily waive his Miranda rights, thereby invalidating his subsequent statement. He does not make the related, but distinct, argument that his incriminating statement was involuntary for other reasons
 
 
 [2]
 On the other hand, Bardney completed three years of high school, told Ibanez he could write and was a registered voter
 
 
 [3]
 Bardney also complains that his right to cross examine witnesses against him was infringed. To show that Bardney had not filed income tax returns from 1990 through 1992, the government put on the stand Donald Gavey, a records officer. Mr. Gavey testified that he had searched the IRS records and had not found an income tax filing for Bardney
 On cross-examination, Bardney's counsel tried to inquire of the witness whether Bardney was required by the tax code to file a return. As the district court ruled, Bardney's counsel did not, and in all probability could not, provide the foundation to show that the witness was qualified to answer such a question. Mr. Gavey's job with the IRS is to maintain documents, not to interpret the tax code. Thus, this claim is meritless.
 
 
 [4]
 Rule 404(b) provides, in relevant part:
 Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident....
 
 
 [5]
 Bardney argues that, because he was acquitted of all charges related to the 1989 raid, the court should not have admitted the evidence. The Supreme Court has held, however, that acquittal of a charge does not prevent a prosecutor from admitting evidence under Rule 404(b) of conduct that comprised the previous charge. See Dowling v. United States, 493 U.S. 342, 348-49, 110 S.Ct. 668, 670 (1990)
 Additionally, Bardney claims that the district court erred by preventing him from bringing out on cross-examination that Bardney was in fact acquitted of all charges stemming from the 1989 raid. While in many cases it will be prudent to allow such evidence in, so as to prevent the danger of undue prejudice against the defendant, such a decision is within the district court's discretion. In this case, the district court determined that such evidence would possibly confuse the jury. We find no abuse of discretion in so ruling.