STATE of Wisconsin, Plaintiff-Appellant,†

v.

Joseph M. ESPINOZA, Defendant-Respondent.

Court of Appeals

*No. 01–1473–CR. Submitted on briefs December 6, 2001.—Decided January 23, 2002.*

2002 WI App 51

(Also reported in 641 N.W.2d 484.)

† Petition to review denied 4-22-02.

On behalf of the plaintiff-appellant, the cause was submitted on the brief of *John M. Daniels*, assistant district attorney of Oshkosh.

On behalf of the defendant-respondent, the cause was submitted on the brief of *Steven P. Weiss*, assistant state public defender of Madison.

Before Nettesheim, P.J., Brown and Anderson, JJ.

¶ 1. ANDERSON, J.   The State of Wisconsin appeals from a circuit court order granting Joseph M. Espinoza's motion to dismiss Count 2 of a criminal complaint charging him with knowingly obstructing police officers contrary to WIS. STAT. §§ 946.41(1) and 939.62(1)(a) (1999–2000).[1] Because we agree with the circuit court that the obstruction charge is not supported by the information/allegations contained in the criminal complaint, we affirm.

¶ 2.   The facts are undisputed. On August 5, 2000, at approximately 11:23 p.m., Officers Mark Tilkens and Paul Jacobsen of the City of Menasha Police Department were dispatched to a reported theft in progress at 432 Broad Street. Upon arrival at that location, the officers had an opportunity to speak with Julie Martin and her daughter Amy Jolly who indicated that two men were attempting to steal Michael Jolly's car from the parking lot of the apartment building.

¶ 3.   The officers then went to look at the vehicle and noticed that the vehicle had been jacked up and off of the ground near the front driver's side and that it appeared as though the front wheel was partially removed. The officers searched the area and could find no other evidence.

¶ 4.   About forty-five minutes later, at approximately 12:10 a.m. on August 6, 2000, the officers received a call back indicating that the subjects were again trying to steal the car as they were now crawling through the grass. Upon arrival, the officers spoke with Michael Jolly, who stated that he had just observed a Hispanic male crawling through the grass. He further

---

[1] All references to the Wisconsin Statutes are to the 1999–2000 version unless otherwise noted.

described the individual as having a dark complexion and long black hair. He stated that he watched the individual flee from the area and run through the front door of the neighboring residence at 436 Broad Street.

¶ 5. Tilkens proceeded to 436 Broad Street and made contact with Espinoza. Both Michael Jolly and Julie Martin later identified Espinoza as the man they had seen crawling through the grass to Michael Jolly's car. Tilkens noticed that there was a car with a flat tire at 436 Broad Street. Espinoza admitted that the car was his girlfriend's, that he had been using it, and that he had gotten a flat tire earlier in the evening.

¶ 6. Espinoza denied being involved in the reported incident with Michael Jolly's car and told the officers that they had the wrong guy. That evening, the officers also made contact with Joseph Gibas, who stated that Espinoza asked him to assist him in stealing a tire. Gibas said that while Espinoza was attempting to remove the tire, Gibas acted as his lookout. He said that a car pulled up and the driver saw them so they ran back to the house. Gibas said that later Espinoza went back a second time to retrieve the jack that had been left behind when they had been scared off.

¶ 7. Espinoza was charged with attempted theft and obstruction. With regard to the obstruction charge, which is the issue on appeal, the criminal complaint states:

> Joseph Espinoza denied being involved in the attempt to steal the tire. Joseph Espinoza became quite upset when officers accused him of attempting to steal the tire, and threaten [sic] to sue the officers, telling them that they had the wrong guy.

¶ 8. Espinoza moved to dismiss the obstruction charge, alleging that his mere denial of guilt, in and of

808

itself, was not a sufficient basis for an obstruction charge. The circuit court agreed and dismissed the obstruction charge. The State appeals.

¶ 9.   Whether a criminal complaint sets forth sufficient probable cause to justify a criminal charge is a legal determination which we review de novo. *State v. Adams*, 152 Wis. 2d 68, 74, 447 N.W.2d 90 (Ct. App. 1989). WISCONSIN STAT. § 968.01 requires a criminal complaint to meet probable cause requirements to confer personal jurisdiction on the circuit court. *State v. White*, 97 Wis. 2d 193, 197, 295 N.W.2d 346 (1980). A criminal complaint is a self-contained charge that must set forth facts within its four corners that are sufficient, in themselves or together with reasonable inferences to which they give rise, to allow a reasonable person to conclude that a crime was probably committed and the defendant is probably culpable. *State v. Haugen*, 52 Wis. 2d 791, 793, 191 N.W.2d 12 (1971). To be sufficient, a complaint must only be minimally adequate. *State v. Gaudesi*, 112 Wis. 2d 213, 219, 332 N.W.2d 302 (1983). This is to be evaluated in a commonsense, rather than a hypertechnical, manner in setting forth the essential facts establishing probable cause. *Id.* A complaint is sufficient under this standard if it answers the following five questions:   (1) Who is charged?; (2) What is the person charged with?; (3) When and where did the alleged offense take place?; (4) Why is this particular person being charged?; and (5) Who says so or how reliable is the informant? *White*, 97 Wis. 2d at 203.

¶ 10.   There is no dispute that the complaint satisfactorily addresses the first, second, third, and fifth questions. The only issue is whether the complaint adequately establishes the reason Espinoza was

charged with obstruction. A valid complaint must allege facts in support of each element of the crime charged, which, if proven, would suffice to convict the defendant of the crime charged. *See Haugen*, 52 Wis. 2d at 796–97. The crime of obstruction has four elements:

> 1. that the accused knowingly gave false information to an officer;
>
> 2. that the officer was acting in an official capacity;
>
> 3. that the officer was doing an act with lawful authority, and;
>
> 4. that the defendant intended to mislead the officer in the performance of his or her duty.

Wis JI—Criminal 1766A; Wis. Stat. § 946.41. Elements two and three are supported by the facts in the complaint. The portion of the complaint in dispute relates to elements one and four and states:

> Joseph Espinoza denied being involved in the attempt to steal the tire. Joseph Espinoza became quite upset when officers accused him of attempting to steal the tire, and threaten [sic] to sue the officers, telling them that they had the wrong guy.

The question therefore is whether the facts in the complaint support elements one and four of the crime of obstruction. That is, do the facts in the complaint support a finding that Espinoza knowingly gave false information to the officers (element one) with the intent to mislead the officers in the performance of their duty (element four).

¶ 11. Wisconsin Stat. § 946.41 states in relevant part:

> **(1)** Whoever knowingly resists or obstructs an

810

officer while such officer is doing any act in an official capacity and with lawful authority, is guilty of a Class A misdemeanor.

**(2)** In this section:

(a) "Obstructs" includes without limitation knowingly giving false information to the officer . . . with intent to mislead the officer in the performance of his or her duty. . . .

¶ 12.  WISCONSIN STAT. § 946.41 permits conviction for obstruction of an officer under circumstances where efforts to intentionally mislead an officer may be involved. *Peters v. State*, 70 Wis. 2d 22, 29, 233 N.W.2d 420 (1975). Nevertheless, our supreme court held in *Peters* that before a charge is made under § 946.41, the district attorney should have sound reasons for believing that statements made by a suspected defendant to the police were knowingly and intentionally made for the purpose of deceiving and misleading the police, and not simply out of a good faith desire to defend against an accusation of crime. *Peters*, 70 Wis. 2d at 29.[2]

¶ 13.  The holding in *Peters* is instructive although not directly on point (because it deals with a situation where the defendant provided a false alibi to the police). *See id.* at 26–29. The issue before us, whether a denial can establish probable cause for the charge of obstruction, is one of first impression in Wisconsin. We therefore take into consideration that statutes in other jurisdictions, which have the similar purpose of punishing one who knowingly or willfully gives false information to a police officer with the intention of misleading

[2] The obstruction statute applicable at the time of *Peters v. State*, 70 Wis. 2d 22, 29, 233 N.W.2d 420 (1975), is substantially the same as the current version.

him or her in the performance of his or her official duties, have been generally construed to exclude prosecution for statements made by a defendant in defense of an accusation of a crime.

¶ 14.   For example, in *People v. Brooks*, 367 N.E.2d 236, 239 (Ill. App. Ct. 1977), the court held that the Illinois obstruction of justice statute excepts the exculpatory denials falsely made by a defendant in answer to police questioning in regard to his or her own involvement in a crime. In *Brooks*, two defendants were convicted in a bench trial of obstructing justice. *Id.* at 236. The conviction arose from an incident at a Rockford, Illinois, filling station. *Id.* A car with three men and a woman pulled into a gas station and there was a disagreement between the station attendant and the occupants. *Id.* After further altercation, the attendant went into the station to call the police. *Id.* When the attendant came back out, he attempted to detain the car and broke its antenna as the car was driven away. *Id.* One of the occupants of the car fired three shots, wounding a friend of the station attendant. *Id.* at 236–37.

¶ 15.   From a description of a distinctive blue and white Ford, late 1950's model, with the name "Brooks" on the windshield, given by the victims, the police identified a car answering the description shortly after the incident. *Id.* at 237. The police stopped the car and Charles E. Brooks and Gene N. Williams were the only occupants in the car. The police found a pistol with three discharged shells and two live cartridges in the cylinder on the street approximately one and one-half blocks from the car. The car's antenna was broken. Williams and Brooks were arrested. *Id.*

812

¶ 16. Both defendants were questioned after being given *Miranda*[3] warnings and signing waivers. *Brooks*, 367 N.E.2d at 237. Brooks was asked whether he was at the station on the date of the occurrence. *Id.* He answered that he was not. *Id.* He was asked whether he had been in a fight at a service station; he said that he had not. *Id.* He was asked whether there had been other people in the car besides himself and Williams; he said no, just he and Williams. *Id.* Brooks said he had only been in Rockford for about ten minutes when he was stopped, was not in a gas station, did not shoot anyone, did not know of anyone that did shoot someone, and did not know about the gun. *Id.*

¶ 17. Williams was similarly questioned and said that he did not know anything about the incident, that he did not shoot anyone, that no one in the car shot anyone and that there was no one in the car but he and Brooks. Both defendants were eventually convicted of obstructing justice. *Id.*

¶ 18. On appeal, the issue was whether false statements to the police as to the participation of the defendants and others in a felony is an obstruction of justice under the statute.[4] *Brooks*, 367 N.E.2d at 236. The defendants argued that since they were arrested, jailed and charged with a serious felony, their protesta-

---

[3] *Miranda v. Arizona*, 384 U.S. 436 (1966).

[4] The applicable Illinois statute is substantially similar to the applicable Wisconsin statute and states in pertinent part:

> 31–4. Obstructing Justice. A person obstructs justice when, with intent to prevent the apprehension or obstruct the prosecution or defense of any person, he knowingly commits any of the following acts:
>
> (a) furnishes false information[.]

*People v. Brooks*, 367 N.E.2d 236, 236 n.1 (Ill. App. Ct. 1977).

tions of innocence in response to police interrogation could not be made the basis of a prosecution for obstructing justice. *Id.* at 237. At the time the answers were made which formed the basis for the conviction, each defendant had been charged by complaint with the offense of attempted murder. *Id.* at 237–38. The defendants were expressly told that they were being questioned about the gas station shooting. *Id.* at 238.

¶ 19. The *Brooks* court held that it was "clear" that "the defendants furnished false information to the interrogating officers." *Id.* at 237. The court then noted that "[t]ruthful answers that the shooting was the act of an accomplice would necessarily inculpate defendants on the attempt[ed] murder charge. Similarly any truthful admission as to the gun or the presence of the one who used it at the scene would have implicated defendants." *Id.* at 238. The court then concluded that the legislature did not intend such a broad result as to include within the statute all false answers or false statements which a defendant utters intending to exculpate himself or herself against a charge of a crime and to prevent his or her prosecution. *Id.*

¶ 20. We note that unlike the court in *Brooks*, the court here did not even make a finding that Espinoza furnished false information to the officers. The court indicated that it remains unknown whether Espinoza was untruthful unless Espinoza is convicted of the crime of attempted theft. The *Brooks* court *did* make a finding that the defendants' statements were untruthful yet upheld their ability to make them without penalty. Like the defendants in *Brooks*, Espinoza was a clear target of the police investigation. Like the defendants in *Brooks*, an affirmative answer from Espinoza would have implicated him in the crime under investigation. The *Brooks* court concluded that the legislature

did not intend such a broad result as to include within the statute all false answers or false statements which a defendant utters intending to exculpate himself or herself against a charge of a crime and to prevent his or her prosecution. *Id.* We also believe that the Wisconsin legislature did not intend such a broad result and adopt this reasoning.

¶ 21.   The State argues that "Espinoza's denial of involvement in a crime which there is probable cause to believe he committed, as a matter of law, establishes probable cause that he also committed the crime of o[b]structing." This broad, sweeping contention disregards the principle of *Peters*, which states that before a charge is made under WIS. STAT. § 946.41, the district attorney should have sound reasons for believing that statements made by a suspected defendant to the police were knowingly and intentionally made for the purpose of deceiving and misleading the police, *and not simply out of a good faith desire to defend against an accusation of crime. Peters*, 70 Wis. 2d at 29. We must keep in mind:   "The function of law enforcement is the prevention of crime and the apprehension of criminals. Manifestly, that function does not include the manufacturing of crime." *Sherman v. United States*, 356 U.S. 369, 372 (1958).

¶ 22.   It seems that the intent of the legislature in WIS. STAT. § 946.41 was to prevent the waste of time, energy and expense involved in having law enforcement officers running down false leads concerning criminal conduct. Doubtless the legislature intended to circumscribe conduct which would frustrate or thwart the police function.   The State makes no claim that Espinoza's mere denial of wrongdoing thwarted the

815

police function. And though truth and morality may have required Espinoza to answer in the affirmative when he was questioned regarding the tire incident, we cannot say that the law required him to do so.[5]

*By the Court.*—Order affirmed.

---

[5] We do not suggest that at sentencing the circuit court cannot consider a defendant's cooperation or lack of cooperation during the investigation leading to the issuance of criminal charges. *See State v. Thompson,* 172 Wis. 2d 257, 264–65, 493 N.W.2d 729 (Ct. App. 1992).