Filed 1/8/26  P. v. Mack CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>v.<br><br>RYAN MARCUS MACK,<br><br>    Defendant and Appellant. | E086127<br><br>(Super.Ct.No. BAF2401383)<br><br>OPINION |

APPEAL from the Superior Court of Riverside County.  Jorge C. Hernandez, Judge.  Affirmed.

Ryan Marcus Mack, in pro per.; and Jo Pastore, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

1

## I.

## INTRODUCTION

A jury found defendant and appellant Ryan Marcus Mack guilty of assault by means of force likely to produce great bodily injury (Pen. Code,[1] § 245, subd. (a)(4); count 1) and violating the personal liberty of another by violence or menace (§ 236; count 2). The jury found defendant not guilty of willfully and unlawfully resisting or obstructing an officer (§ 148, subd. (a); count 3). The trial court sentenced defendant to an aggregate middle term of three years in state prison with no credit for time served as he was serving time on an unrelated charge at the time of the current offenses. The court ordered defendant to pay a $300 restitution fine (§ 1202.4, subd. (b)) and a stayed $300 parole revocation fine (§ 1202.45, subd. (c)). The court waived the $40 court operations fee and $30 criminal assessment fee (§ 1465.8, subd. (a)(1); Gov. Code, § 70373).

Defendant appeals from the judgment. Appointed counsel has filed a brief under the authority of *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*), requesting this court to conduct an independent review of the record to determine whether there are any arguable issues on appeal. In addition, defendant has had an opportunity to file a supplemental brief with this court and has done so. After independently reviewing the record, we find no arguable error that would result in a disposition more favorable to defendant and affirm.

---

[1] All future statutory references are to the Penal Code.

## II.

## FACTUAL BACKGROUND

On August 2, 2024, Deputy Lucas Quiroz worked as a correctional officer at the Larry D. Smith Correctional Facility. He controlled housing units which housed inmates up to 200 people. At approximately 10:48 p.m., Deputy Quiroz responded to a fight in housing unit 15 and called for backup. When he arrived 30-40 seconds after receiving the call, he observed defendant and another inmate beating an inmate, who was lying in a fetal position on the floor. Defendant was on top of the victim throwing multiple punches, in excess of 50, around his face and head. Defendant was also seen holding down the victim multiple times.[2]

About 15 deputies responded and told them, " 'Stop fighting, stop fighting.' " After a deputy deployed balls of pepper spray to get defendant and his cohort to stop fighting, defendant stopped fighting and lay down on the floor on his stomach. The fight lasted approximately two to three minutes. Deputy Quiroz and other deputies thereafter handcuffed all of the individuals involved and took them to the medical office. Per policy, Deputy Quiroz waited until the fight was over before he, and the other officers, entered the area to handcuff everyone. However, he admitted that if it is a "really bad fight" or "life threatening fight" the policy is to make entry immediately.

---

[2] A videotape of the incident was presented to the jury, where the victim was seen being punched multiple times by defendant and his cohort. The victim was not present and did not testify.

Deputy Quiroz had responded to over 50 hand-to-hand combats while employed as a correctional officer and noted that there were not always visible injuries. Deputy Quiroz acknowledged not speaking with the victim, defendant, the codefendant, or anyone else after the incident.

Deputy Rafael Vargas also worked as a correctional officer at the Larry D. Smith Correctional Facility. He responded around 11:00 p.m. on August 2, 2024, and took photographs of the three inmates involved in the incident. Deputy Vargas noticed that the victim's face was puffy and escorted him to the medical office. He also observed a little cut, about less than an inch, and bruises on the victim's face. The victim also sustained swelling around his eyes and an enflamed and bruised lower lip. Defendant did not have any injuries on his face but about an inch cut on his finger right above the knuckle.

After the People rested, defense counsel made a motion to dismiss under section 1118.1 on due process grounds. Defense counsel argued that defendant had the right to face his accuser and cross-examine him and there was no victim present to testify. The prosecutor responded that there was a witness present "for a good portion of the fight" and he did witness defendant striking the victim in excess of 50 times. The prosecutor also noted that the incident was captured on surveillance video, which was played for the jury, that corroborated Deputy Quiroz's statements and accounts of the incident.

4

The trial court denied defendant's section 1118.1 motion, explaining as follows: "The Court's burden on application by defense pursuant to Penal Code Section 1118.1 is to determine whether or not there's sufficient evidence to sustain a jury verdict on appeal. The evidence before the finder of fact at this time is what looks like a battery and or an assault or both an assault and battery that could conceivably be determined to be a felony based upon the number of punches that were thrown. There's been nothing to show that the witness is—or I should say the victim, is unavailable to either side. But the victim is, so to speak, here on videotape. I think that's sufficient. Certainly we'd like to have him here, but I don't think there's a violation of due process. The application under 1118.1 is denied."

After closing argument, the jury found defendant guilty of assault by means of force likely to produce great bodily injury (§ 245, subd. (a)(4); count 1) and violating the personal liberty of another by violence or menace (§ 236; count 2). The jury found defendant not guilty of willfully and unlawfully resisting or obstructing an officer (§ 148, subd. (a); count 3). The trial court sentenced defendant to an aggregate middle term of three years in state prison. Defendant timely appealed.

## III.

## DISCUSSION

After defendant appealed, upon his request, this court appointed counsel to represent him. Upon examination of the record, counsel has filed a brief under the authority of *Wende*, *supra*, 25 Cal.3d 436 and *Anders*, *supra*, 386 U.S. 738, setting forth a

statement of the case, a summary of the facts and potential arguable issues and requesting this court to conduct an independent review of the record. Counsel has identified the potential issue of whether there was sufficient evidence to support defendant's conviction for assault with force likely to produce great bodily injury where there was no testimony from the victim and the victim suffered minor injuries.

We offered defendant an opportunity to file a personal supplemental brief, and he has done so. In his supplemental letter brief, defendant appears to argue there was insufficient evidence to support the aggravated assault and false imprisonment charges. He faults the correctional facility for placing the victim, who allegedly had mental health issues, in his unit. He also argues that he had a right to face his accuser and that he should have received credit for time served.

"In assessing a claim of insufficiency of evidence, the reviewing court's task is to review the whole record in the light most favorable to the judgment to determine whether it discloses substantial evidence—that is, evidence that is reasonable, credible, and of solid value—such that a reasonable trier of fact could find the defendant guilty beyond a reasonable doubt." (*People v. Rodriguez* (1999) 20 Cal.4th 1, 11.) In undertaking this review, our job does not include reweighing conflicts in the evidence or assessing witness credibility. (*People v. Boyer* (2006) 38 Cal.4th 412, 480; see *People v. Zaragoza* (2016) 1 Cal.5th 21, 44 [it is not the task of a reviewing court to "resolve credibility issues or evidentiary conflicts"].) Moreover, "unless the testimony is physically impossible or

inherently improbable, testimony of a single witness is sufficient to support a conviction." (*People v. Young* (2005) 34 Cal.4th 1149, 1181.)

Section 245, subdivision (a)(4) prohibits an assault upon another person "by any means of force likely to produce great bodily injury." "An assault is an unlawful attempt, coupled with a present ability, to commit a violent injury on the person of another." (§ 240.) "Great bodily injury is bodily injury which is significant or substantial, not insignificant, trivial or moderate." (*People v. Armstrong* (1992) 8 Cal.App.4th 1060, 1066.)

"There is no merit to defendant's contention that where injuries are actually inflicted, the measure of the likelihood of great bodily injury resulting from the assault is demonstrated by the injuries actually inflicted." (*People v. Samuels* (1967) 250 Cal.App.2d 501, 512.) Similarly, there is "no merit" to the notion that "the likelihood of great bodily injury from a blow is demonstrated solely by the injury actually inflicted." (*Id.* at p. 513.) Rather, the injury actually inflicted is but one circumstance which may be relevant to the jury in making the factual determination whether the force used was likely to cause great bodily injury. (*Ibid.*)

The record here discloses circumstances which are more than sufficient to support a finding that defendants assaulted the victim with substantial force, i.e., force likely to produce great bodily injury. The correctional officers saw two men hitting and punching the victim with closed fists in his head and face area and holding the victim while the victim was in a vulnerable position. The victim was on the ground, lying in a fetal

7

position, presumably trying to protect himself from multiple strikes by two assailants. Defendant punched the victim in excess of 50 times and only stopped after pepper ball sprays were expelled. The victim suffered a puffy face, a little cut, bruises, swelling around his eyes, and an enflamed and bruised lower lip.

In *People v. Roberts* (1981) 114 Cal.App.3d 960, the court held that kicking the head and torso of a largely defenseless man on the ground is "unmistakably an assault which a jury could reasonably find was likely to produce great bodily harm." (*Id.* at p. 965.) The court also observed that the victim "received a blow to the forehead which produced a large welt. If this blow had struck the nearby eye, it might well have produced blindness in that eye, surely a great bodily injury." (*Ibid.*) As in *Roberts*, defendant was simply lucky that none of the blows, already forceful enough to cause the victim's face to be puffy and eyes swelling, caused any greater injury. There is sufficient evidence in the record here to convict defendant of assault by means of force likely to produce great bodily injury.

Likewise, there is sufficient evidence to support the false imprisonment charge. "False imprisonment is the unlawful violation of the personal liberty of another." (§ 236.) A victim's personal liberty is violated when he or she is compelled to remain where he or she does not wish to remain or compelled to go where he or she does not wish to go. (*People v. Bamba* (1997) 58 Cal.App.4th 1113, 1121.) False imprisonment is felonious when it is effected by "violence, menace, fraud, or deceit." (§ 237.)

8

Here, the victim was being held down by defendant while he and his codefendant punched the victim in the face in excess of 50 times. Deputy Quiroz observed the incident for two to three minutes until pepper ball sprays were deployed at defendant and his cohort. Because the victim was unable to get up or get away from the attackers while he was being punched in his face and lying in a fetal position—his personal liberty was restrained, and the crime of false imprisonment was complete at that time. The evidence was sufficient to establish felony false imprisonment of the victim by violence or menace.

We also reject defendant's due process violation and right to face the accuser at trial claims. The Confrontation Clause does not require the prosecution to call the victim as a witness. (*Coy v. Iowa* (1988) 487 U.S. 1012, 1016 ["the Confrontation Clause guarantees the defendant a face-to-face meeting with witnesses appearing before the trier of fact"]; accord, *People v. Bharth* (2021) 68 Cal.App.5th 801, 814.) The prosecution merely has to have admissible evidence to prove their case. Here, Deputy Quiroz's observation of the assault was admissible evidence. Deputy Quiroz witnessed the victim being held down by defendant while he and his codefendant punched the victim in the face in excess of 50 times. In addition, besides Deputy Quiroz's admissible testimony at trial, the People presented the surveillance video of the incident. The video surveillance was admissible at trial and corroborated Deputy Quiroz's testimony of the assault and provided overwhelming evidence of defendant's guilt as to the charges of assault by means likely to produce great bodily injury and false imprisonment. The trial court noted there was no evidence that the victim was unavailable for defendant to call. Defendant

9

thus could have called the victim. There was no due process error or violation of defendant's right to confront the accuser.

Finally, we reject defendant's claim that he was entitled to presentence custody credits in this matter. A defendant is not entitled to presentence custody credits when he or she is charged with a crime while already incarcerated and serving a sentence on a separate, earlier crime. (*People v. Bruner* (1995) 9 Cal.4th 1178, 1180; *In re Joyner* (1989) 48 Cal.3d 487, 489; *In re Rojas* (1979) 23 Cal.3d 152, 155.)

An appellate court conducts a review of the entire record to determine whether the record reveals any issues which, if resolved favorably to defendant, would result in reversal or modification of the judgment. (*Wende*, *supra*, 25 Cal.3d at pp. 441-442; *People v. Feggans* (1967) 67 Cal.2d 444, 447-448; *Anders*, *supra*, 386 U.S. at p. 744; see *People v. Johnson* (1981) 123 Cal.App.3d 106, 109-112.)

Pursuant to the mandate of *People v. Kelly* (2006) 40 Cal.4th 106, we have independently reviewed the entire record for potential error and find no arguable error that would result in a disposition more favorable to defendant.

IV.

DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

CODRINGTON
Acting P. J.

We concur:


RAPHAEL
J.


MENETREZ
J.